1   RUSSELL L. JOHNSON (SBN 53833)
    rljohnson@sidley.com
2   EDWARD V. ANDERSON (SBN 83148)
    evanderson@sidley.com
3   TEAGUE I. DONAHEY (SBN 197531)
    tdonahey@sidley.com
4
    SIDLEY AUSTIN LLP
5   555 California Street, Suite 2000
    San Francisco, California 94104-1715
6   Telephone:    415-772-1200
    Facsimile:    415-772-7400
7
    Attorneys for Plaintiff
8   STMicroelectronics, Inc.

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12

13  STMICROELECTRONICS, INC.,             )   Case No. C 08 02332 MMC
     a Corporation,                        )
14                                         )   **NOTICE OF MOTION TO SHORTEN
                                           )   TIME FILED IN CASE NO. 05-04691 JF**
15               Plaintiff,                )
                                           )   **Date:**
16          vs.                            )
                                           )
17  ELIYAHOU HARARI, an individual;        )   **Ctrm: 7 (Hon. Maxine Chesney)**
    SANDISK CORPORATION, a corporation; and )
18  DOES 1 TO 20, inclusive                )
                                           )
19               Defendants.               )
                                           )
20  _____   )

21

22

23

24

25

26

27

28

1  TO THE COURT AND ALL PARTIES OF RECORD

2      Please take notice of Plaintiff STMicroelectronics, Inc.'s Motion to Shorten Briefing

3  Schedule For Motion to Remand filed in Case No. 05-04691 JF attached hereto as Exhibit 1.

7  Dated:  May 12, 2008                    SIDLEY AUSTIN LLP

                                          By:  /s/ Russell L. Johnson
                                                  Russell L. Johnson

                                          Attorneys for Defendants
                                          STMicroelectronics, Inc.

# Exhibit 1

RUSSELL L. JOHNSON (SBN 53833)
rljohnson@sidley.com
EDWARD V. ANDERSON (SBN 83148)
evanderson@sidley.com
TEAGUE I. DONAHEY (SBN 197531)
tdonahey@sidley.com

SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104-1715
Telephone:    415-772-1200
Facsimile:    415-772-7400

Attorneys for Plaintiff
STMicroelectronics, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STMICROELECTRONICS, INC., a Corporation, <br><br>                    Plaintiff, <br><br>          vs. <br><br> ELIYAHOU HARARI, an individual; SANDISK CORPORATION, a corporation; and DOES 1 TO 20, inclusive <br><br>                    Defendants. | Case No. 05-04691 JF <br><br> Related Case No. 08-02332 MMC <br><br> **PLAINTIFF STMICROELECTRONICS, INC.'S MOTION TO SHORTEN BRIEFING SCHEDULE FOR MOTION TO REMAND** <br><br> **Date: N/A** <br><br> **Time: N/A** <br><br> **Ctrm: 3 (Hon. Jeremy Fogel)** |

Pursuant to Civil L.R. 6-3, Plaintiff STMicroelectronics, Inc. ("ST") moves the Court for an Order shortening the time for briefing on ST's Second Motion to Remand which will be filed on Monday, May 12, 2008. This motion is based on the following memorandum, and the Declaration of Russell L. Johnson In Support of ST's Motion to Shorten Time ("Johnson Decl."). ST's Motion to Remand should be briefed on an expedited basis because Defendants SanDisk Corp. ("SanDisk") and Eliyahou Harari ("Harari") previously removed this case to this Court where the issue of federal court jurisdiction was exhaustively briefed and argued before the case was remanded, and Defendants second removal is nothing more than a further attempt to delay these proceedings. This case has been pending for 2 ½ years but very little progress towards a trial has been made because of Defendants procedural gamesmanship.

On October 14, 2005, the complaint was filed in California state court alleging that ST is the rightful owner of certain patents assigned to SanDisk by Harari based on Harari's contractual and fiduciary obligations to ST's predecessor in interest, Wafer Scale Integration ("WSI"). Defendants removed this case to this Court on November 16, 2005. *STMicroelectronics, Inc. v. Harari et al*, Case No. 05-04691 (Docket No. 1). Defendants originally argued that the federal courts had exclusive jurisdiction over this action because "inventorship" issues necessarily needed to be resolved and thus ST's "well-pleaded" complaint "*necessarily depend[ed] on resolution of a substantial question* of federal patent law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (emphasis added). Federal court jurisdiction was briefed extensively and argued on two occasions, yet SanDisk never argued that the federal courts had exclusive jurisdiction over this action based on an assignment provision in Harari's inventorship contract, the interpretation of which Defendants now contend creates federal jurisdiction.[1] This Court granted ST's motion to

---

[1] Defendants will likely argue that a federal law only became applicable when ST allegedly changed its assignment theory from a right to demand an assignment to an automatic assignment. Notice of Removal, ¶¶ 8-9. However, the case Defendants rely upon was one where the court decided under federal law whether an assignment clause creates an automatic assignment or an obligation to assign. *DDB Technologies L.L.P. v. MLBA Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir. 2008). If Defendants are correct, federal law is equally applicable under either theory asserted by ST and the alleged change in ST's position did not suddenly make the case subject to federal law for the first time. Accordingly, the removal here is untimely. 28 U.S.C. § 1446(b).

MOTION TO SHORTEN TIME BRIEFING SCHEDULE FOR MOTION TO REMAND
Case No. C 04-04691 JF
Related Case No. C 08-02332 MMC

1    remand on July, 18, 2006. *STMicroelectronics, Inc. v. Harari et al*, Case No. 05-04691 (Docket No.

2    93); Johnson Decl. Ex. A. During the removal, Defendants refused to provide any discovery

3    resulting in a eight month delay in the case during which no progress on the merits was made.

4    Johnson Decl. ¶ 2.

5          After remand, Defendants' gamesmanship continued with a motion to strike ST's unfair

6    competition count under Cal. Bus. & Prof. Code § 17200. Johnson Decl. ¶ 3. Tellingly, SanDisk

7    did not move to strike ST's unfair competition count when they answered in this Court.[2] The

8    Superior Court denied SanDisk's motion, and Defendants filed a motion to stay discovery while the

9    appeal was pending, arguing that discovery should be stayed because the Superior Court did not

10   have jurisdiction. *Id*. This motion was granted. *Id*. SanDisk lost its appeal, and the California

11   Supreme Court denied SanDisk's petition for review. *Id*. By the time the denial of review was

12   made, the case had been pending for almost two years without Defendants having provided any

13   discovery.

14         In December 2007, discovery did finally begin, over two years after the case was filed. But

15   on May 6, 2008, after only five months of discovery, Defendants once again stopped discovery, and

16   any progress towards trial, by removing this case a second time. This removal occurred just nine

17   days before, pursuant to an order of the Superior Court, Defendants were to file their summary

18   judgment motion and on the eve of the Case Management Conference, where ST was seeking an

19   order setting a close of discovery and a trial date. Johnson Decl. ¶ 4, Ex. C.

20         As ST's motion to remand will demonstrate, there is no basis for the second removal of this

21   case by Defendants. ST's complaint has remain unchanged from the time of the filing of the first

22   motion for removal to the second motion for removal. This Court has already determined that

23   "adjudication of [ST's] state law claims does not require resolution of a substantial question of

24

25

---

26   [2] After removal, instead of filing an anti-SLAPP motion to strike ST's complaint, *see, e.g.*, *United States ex rel.
     Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–73 (9th Cir. 1999) (holding that anti-SLAPP motions

27   may be brought in federal court), Defendants filed an answer to the complaint on November 23, 2005.

28

patent law." *STMicroelectronics, Inc. v. Harari et al*, Case No. 05-04691 (Docket No. 93); Johnson Decl. Ex. A.

Moreover, in February 2008, Defendants filed a motion for judgment on the pleadings on the grounds that ST's "causes of action require the resolution of a substantial question of federal patent law and therefore exclusive jurisdiction is vested in federal court." Johnson Decl. Ex. D. On March 11, 2008, the Superior Court denied the motion, holding that:

> Defendants have failed to show from the face of the Complaint, or matters judicially noticeable, that any of plaintiff's causes of action are created by federal patent law or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. (*Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800, 809.)

> The Complaint in this case concerns a question of patent ownership, a question exclusively for state courts. (*Jim Arnold Corp. v. Hydrotech Sys., Inc,.* 109 F.3d 1567, 1572 (Fed. Cir. 1997).)

Johnson Decl. Ex. E. Defendants have now removed this case based on a subsequent interrogatory answer by ST which Defendants claim created federal jurisdiction.[3] There is no basis for this assertion and this case must be remanded.

However, in order to grant this motion to shorten time, this Court need not decide the merits of the motion to remand to be filed by ST. The order shortening time should be granted in order to prevent undue prejudice to ST. The next hearing date this court has available on its calendar is July 25, 2008. With this hearing date, an order remanding this case is unlikely until August 2008. By the time this case gets back to state court, almost three years will have elapsed since the complaint was filed, and almost one year of that time will have been spent in federal court without any progress on the merits.

---

[3] An automatic assignment vests legal title of a promised interest in the assignee immediately when the promised interest comes into the possession of an assignor. An obligation to assign vests equitable title of a promised interest in the assignee when the promised interest comes into the possession of an assignor. Some affirmative act by the assignee is required before the equitable interest vests into legal title. The Federal Circuit recently held in *DDB Technologies L.L.P. v. MLBA Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir. 2008) that the construction of a patent assignment clause can be a matter of federal law. Defendants contend that ST has put at issue a substantial question of federal law because ST has construed the Inventions Agreement as an automatic assignment in a response to an interrogatory dated April 7, 2008. This interrogatory answer did not make this case suddenly removable.

If this matter is not heard on shortened time, and the case is subsequently remanded, Defendants will have benefited from their improper removal because they will have obtained a stay of the case which will likely last over three months. Simply remanding this case will not cure the harm caused to ST by yet another procedural delay created by Defendants.

To avoid undue prejudice, ST requests that this Court resolve the remand motion quickly by ordering that that ST's motion to remand be submitted without oral argument on the following briefing schedule: Monday, May 10, 2008, ST files its motion to remand; Friday May 15, 2008, Defendants file any opposition and hand serve on counsel for ST any opposition papers not electronically filed; Tuesday, May 19, 2008, ST files its reply. This allows the motion to be decided on the papers at the Court's earliest possible convenience.

The parties met and conferred by letter and telephonically regarding the adjudication of ST's second motion to remand on an expedited basis. Defendants oppose any shortened briefing period and oppose the adjudication of this matter without a hearing. Defendants' letter rejecting an order shortening time and a decision on the papers gives no reasons for this position. Johnson Decl. Ex. G.

Certainly, the parties should be ready to brief this issue quickly. Defendants' claim of federal question jurisdiction in this case has already been briefed and argued three times, twice in this Court,[4] and once in state court only two months ago. Any additional issues raised by ST's interrogatory answer and the single case cited by Defendants in their removal papers do not require that the parties take over two months to brief this matter.

To the contrary, Defendants had an obligation before filing the removal papers to thoroughly research and consider this issue, and they should be prepared to provide the Court without delay the reasons why they believe removal is justified – particularly when federal jurisdiction has previously been rejected in both federal and state court. ST believes that the Court should infer from the demand made by counsel for Defendants for a briefing schedule that exceeds two months that: (i) this matter was not thoroughly researched and considered before the removal was filed; and

---

[4] This Court has already considered *twelve* briefs and two oral arguments on this issue.

MOTION TO SHORTEN TIME BRIEFING SCHEDULE FOR MOTION TO REMAND
Case No. C 04-04691 JF
Related Case No. C 08-02332 MMC

1    (ii) Defendants' goal is to delay this case (as this is the certain result of the long drawn out briefing

2    schedule demanded by Defendants).

3         It is clear that Defendants will not be prejudiced if this issue is briefed for the fourth time on

4    an expedited basis.  It is equally clear that further delay of this case prejudices ST and benefits

5    Defendants who have sought delay at every turn.  ST's request for expedited resolution of this

6    motion should be granted.

7

8    Dated:  May 9, 2008                         SIDLEY AUSTIN LLP

9

10                                              By: /s/ Russell L. Johnson
                                                    Russell L. Johnson

11                                              Attorneys for Plaintiff
12                                              STMicroelectronics, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SHORTEN TIME BRIEFING SCHEDULE FOR MOTION TO REMAND
Case No. C 04-04691 JF
Related Case No. C 08-02332 MMC

RUSSELL L. JOHNSON (SBN 53833)
rljohnson@sidley.com
EDWARD V. ANDERSON (SBN 83148)
evanderson@sidley.com
TEAGUE I. DONAHEY (SBN 197531)
tdonahey@sidley.com

SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104-1715
Telephone:    415-772-1200
Facsimile:    415-772-7400

Attorneys for Plaintiff
STMicroelectronics, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC.,<br> a Corporation,<br><br>                  Plaintiff,<br><br>          vs.<br><br>ELIYAHOU HARARI, an individual;<br>SANDISK CORPORATION, a corporation; and<br>DOES 1 TO 20, inclusive<br><br>                  Defendants. | Case No. 05-04691 JF<br><br>Related Case No. 08-02332 MMC<br><br>**DECLARATION OF RUSSELL L. JOHNSON IN SUPPORT OF ST'S MOTION TO SHORTEN TIME**<br><br>**Date: N/A**<br><br>**Time: N/A**<br><br>**Ctrm: 3 (Hon. Jeremy Fogel)** |

1   I, Russell L. Johnson, declare and state:

2       1.      I am a member of the firm Sidley Austin LLP, and am one of the attorneys of record

3   for Plaintiff STMicroelectronics, Inc. ("ST").  I make this declaration in support of ST's Motion to

4   Shorten Time.

5       2.      Defendants removed this action to this Court on November 16, 2005.  While this case

6   was in federal court, Defendants refused to provide discovery.

7       3.      After remand, Defendants filed a motion to strike ST's unfair competition count

8   under Cal. Bus. & Prof. Code § 17200.  The Superior Court denied SanDisk's motion, and

9   Defendants filed a motion to stay discovery while the appeal was pending.  Defendants' motion to

10  stay was granted.  The California Court of Appeal affirmed the Superior Court's denial of SanDisk's

11  motion to strike, and the California Supreme Court denied SanDisk's petition for review.

12      4.      Defendants began producing documents in February 2008, and removed this action

13  for a second time on May 6, 2008.  This removal occurred nine days before Defendants were to file

14  their summary judgment motion based on the statute of limitations pursuant to an order of the

15  Superior Court, and on the eve of the Case Management Conference scheduled for May 8, 2008.

16      5.      Attached hereto as Exhibit A is a true and correct copy of this Court's Order Granting

17  Plaintiff's Motion for Reconsideration and Remanding Action to Alameda County Superior Court.

18      6.      Attached hereto as Exhibit B is a true and correct copy of this Court's Order Denying

19  Plaintiff's Motion to Remand.

20      7.      Attached hereto as Exhibit C is a true and correct copy of the ST's Case Management

21  Statement filed April 28, 2008.

22      8.      Attached hereto as Exhibit D is a true and correct copy of Defendants' Notice of

23  Motion and Motion for Judgment on the Pleadings; Memorandum in Support Thereof filed February

24  7, 2008.

25      9.      Attached hereto as Exhibit E is a true and correct copy of the Santa Clara County

26  Superior Court's Order denying Defendants' Motion for Judgment on the Pleadings dated March 11,

27  2008.

28

-1-

JOHNSON DECLARATION ISO MOTION TO SHORTEN TIME
Case No. C 04-04691 JF
Related Case No. C 08-02332 MMC

10.     Attached hereto as Exhibit F is a true and correct copy of correspondence from me to Counsel for Defendants dated May 7, 2008.

11.     Attached hereto as Exhibit G is a true and correct copy of correspondence from Counsel for Defendants to me dated May 8, 2008.

12.     On May 8, 2008, I met and conferred with Counsel for Defendants regarding (a) relating the ongoing actions between SanDisk and ST in the Federal District Court for the Northern District of California, (b) shortening the briefing schedule for ST's second motion to remand, and (c) adjudicating ST's second motion to remand without a hearing.  The parties agree this action should be related to the docket from when this case was originally removed.  Defendants oppose shortening the briefing schedule or resolving ST's second motion to remand without a hearing date.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at San Francisco, California on this 9th day of May, 2008.


_____/s/_____

Russell L. Johnson

JOHNSON DECLARATION ISO MOTION TO SHORTEN TIME
Case No. C 04-04691 JF
Related Case No. C 08-02332 MMC

# Exhibit A

**E-Filed 7/18/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC., <br><br>          Plaintiff, <br><br>    v. <br><br> ELIYAHOU HARARI, et al., <br><br>          Defendants. | Case Number C 05-4691 JF <br><br> ORDER[1] GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND REMANDING ACTION TO ALAMEDA COUNTY SUPERIOR COURT <br><br> [re: doc. no. 39] |

Plaintiff STMicroelectronics, Inc. ("Plaintiff" or "ST") filed the instant action in the Alameda County Superior Court on October 14, 2005, asserting seven state law claims for: (1) breach of fiduciary duty; (2) breach of written contract; (3) fraud; (4) conversion; (5) inducing breach of contract; (6) unjust enrichment; and (7) unfair competition under California Business & Professions Code § 17200 ("§ 17200"). Defendants Eliyahou Harari ("Harari") and SanDisk Corporation ("SanDisk") removed the action to this Court on November 16, 2005 on the ground that adjudication of the state law claims alleged in the complaint requires resolution of a substantial issue of patent law. This Court denied Plaintiff's motion for remand by order dated

---

[1]      This disposition is not designated for publication and may not be cited.

March 20, 2006 ("March 20 Order).  Plaintiff seeks reconsideration of that order.  The Court has

considered the briefing of the parties as well as the oral arguments presented at the hearing on

June 9, 2006.  For the reasons discussed below, the Court will grant Plaintiff's motion for

reconsideration and will remand the action to the Alameda County Superior Court.[2]

## I. BACKGROUND

This Court's March 20 Order sets forth the factual and procedural background of this

case, which need not be repeated in full.  As relevant here, Harari was a co-founder and key

employee of Wafer Scale Integration ("WSI"), the predecessor company of Plaintiff ST.  Harari

signed various agreements with WSI, including the agreement central to the instant dispute, the

"Employee Agreement Regarding Confidentiality & Inventions" ("Inventions Agreement").  The

relevant paragraph of that agreement reads in its entirety as follows:

> 3.      I will promptly disclose and describe to Company (i) *all inventions*, improvements, discoveries and technical developments ("Inventions"), whether or not patentable, *made or conceived by me, either alone or with others, during the term of my employment*, provided that Company shall receive such information in confidence.  *I hereby assign and agree to assign to Company my entire right, title and interest in and to such Inventions which relate in any way to or are useful in Company's business as presently conducted or as conducted at any future time during my employment*, and agree to cooperate with Company and its designee(s) both during and after my employment in the procurement and maintenance, at Company's expense and at its discretion, of patents, copyrights, and/or other protection of Company's rights in such inventions.  I will keep and maintain adequate and current written records of all such Inventions, which shall be and remain the property of Company.

Inventions Agreement ¶ 3 (emphasis added).

WSI was in the business of designing and selling programmable system devices,

including memory systems.  While serving as a director and consultant to WSI, Harari filed four

patent applications without disclosure to WSI.  After submitting his resignation to WSI but

before such resignation was accepted, Harari filed two more patent applications without

disclosure to WSI.  ST claims that all the inventions described in the applications were conceived

during the term of Harari's employment and related to WSI's business, and thus that the

---

[2] Because it concludes that remand is appropriate, the Court will not address Defendants' pending motion for summary judgment and Plaintiff's motion pursuant to Federal Rule of Civil Procedure 56(f), both of which also were argued on June 9, 2006.

2

Case No. C 05-4691 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION ETC.
(JFLC2)

1  inventions described in the applications fell within Harari's disclosure and assignment

2  obligations.  Fifty patents[3] have issued from the six applications, all listing Harari as sole

3  inventor or co-inventor.  All fifty patents have been assigned to SanDisk, a company started by

4  Harari that competes directly with ST.

5  ## II. PRIOR ORDER DENYING MOTION FOR REMAND

6  As set forth in the March 20 Order, Defendants assert that federal jurisdiction exists

7  because adjudication of Plaintiff's state law claims "necessarily depends on resolution of a

8  substantial question of federal patent law."  *See Christianson v. Colt Indus. Operating Corp.*, 486

9  U.S. 800, 809 (1988).  Specifically, Defendants assert that adjudication of Plaintiff's claims

10  requires an inventorship analysis; it is well-settled that inventorship raises a substantial question

11  of federal law.  *See MCV, Inc. v. King-Seely Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989).

12  Plaintiff asserts that its state law claims do not implicate inventorship issues at all, but rather

13  implicate only issues of ownership.  Ownership and inventorship issues are completely separate

14  issues.  *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993).  Ownership

15  "is a question of who owns legal title to the subject matter in a patent," while "inventorship is a

16  question of who actually invented the subject matter claimed in a patent."  *Id.*

17  In its March 20 Order, the Court rejected two of Defendants' arguments.  First,

18  Defendants claimed that Plaintiff seeks assignment of *all* of the patents that issued from the six

19  disputed applications, even those as to which Harari was a co-inventor rather than the sole

20  inventor.  Defendants argued that in order for Plaintiff to prevail on those claims, a court would

21  have to determine that Harari actually was the sole inventor of the patents, such that assignment

22  to Plaintiff of Harari's rights would result in assignment of the patents in their entirety.  The

23  Court concluded that Defendants were reading Plaintiff's complaint too broadly, and that fairly

24

25

26

27  [3] Plaintiff states that fifty patents have issued from the subject applications, while
Defendants state that forty-eight patents have issued.  This discrepancy does not bear on the

28  Court's analysis.  For ease of reference, the Court uses the number fifty throughout this order.

3

1    read, the complaint actually seeks assignment only of *Harari's interest* in each of the patents.[4]

2        Second, the Court rejected Defendants' argument that Plaintiff is relying on violation of

3    patent laws to support its state law unfair competition claim under § 17200.  The Court

4    concluded that the § 17200 claim is based upon breaches of state law fiduciary and contractual

5    obligations and thus does not implicate federal patent laws.

6        What the Court did find persuasive was Defendants' argument that Harari's disclosure

7    and assignment obligations extended only to those *portions* of the patented inventions that Harari

8    personally conceived during his employment with WSI.  Under this construction of the

9    Inventions Agreement, Harari's "inventive contribution" to each patent must be identified before

10   it can be determined whether the patented invention fell within Harari's disclosure and

11   assignment obligations.  Having reconsidered the matter, the Court now believes that this view is

12   erroneous, for the reasons discussed below.

13                              **III. RECONSIDERATION**

14       It is unclear how Defendants, and subsequently the Court, came to inject the phrase

15   "inventive contribution" into the discussion of Harari's contractual disclosure and assignment

16   obligations.  The phrase does not appear in the Inventions Agreement and, indeed, the express

17   language of that agreement directly contradicts the notion that only Harari's "inventive

18   contributions" had to be disclosed and assigned.  As noted above, the Inventions Agreement

19   required *disclosure* of "all inventions ... made or conceived by [Harari], either alone or with

20   others, during the term of [Harari's] employment."  Inventions Agreement ¶ 3.  Accordingly,

21   Harari was obligated to disclose the inventions described in the six disputed patent applications,

22   regardless of whether those inventions were conceived by Harari alone or with others, if the

23   inventions were conceived during the term of Harari's employment.  This disclosure obligation

24   was not limited to Harari's "inventive contribution" to such inventions and likewise was not

25   limited to any particular subject matter; Harari was required to disclose *all* inventions, period, as

26

27   _____

28       [4] Plaintiff's counsel confirmed this reading of the complaint at the original hearing on the
     motion for remand.

                                      4

1   long as the temporal limitation in the Inventions Agreement was met (i.e., as long as the

2   invention was conceived during Harari's term of employment).

3        The Inventions Agreement also required *assignment* of Harari's "entire right, title and

4   interest in and to such Inventions which relate in any way to or are useful in Company's business

5   as presently conducted or as conducted at any future time during [Harari's] employment." *Id.*

6   This language did not require assignment of Harari's "inventive contribution" to such inventions;

7   it required assignment of Harari's *entire right* to any invention, whether conceived alone or with

8   others, that meets the temporal limitation (i.e., that was conceived during Harari's term of

9   employment) and that meets the subject matter limitation (i.e., that was related to or useful to

10  WSI's business).

11       It is undisputed that Harari is named as sole inventor or co-inventor on the fifty patents at

12  issue. "Patent issuance creates a presumption that the named inventors are the true and only

13  inventors." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

14  "Because conception is the touchstone of inventorship, each joint inventor must generally

15  contribute to the conception of the invention." *Id.* (internal quotation marks and citation

16  omitted). "[E]ach co-inventor presumptively owns a pro rata undivided interest in the entire

17  patent, no matter what their respective contributions." *Id.* at 1465. As a matter of law, then, the

18  fact that Harari is named as a sole inventor or co-inventor on the patents at issue establishes that

19  he contributed to the conception of the inventions described therein and that he thereafter

20  acquired a pro rata undivided interest in each patent for which he is named an inventor. Because

21  he was required to disclose to WSI *all* inventions that he conceived *alone or with others* during

22  his term of employment, and to assign *his entire right* in such inventions if they related to WSI's

23  business, there is no need to inquire into Harari's precise inventive contribution. The only

24  relevant questions are whether the inventions described in the subject patents were "made or

25  conceived" during Harari's term of employment and, if so, whether the patented inventions

26  related to WSI's business as conducted during Harari's term of employment.

27       Defendants argue that these questions – whether the patented inventions meet the

28  temporal and subject matter limitations of the Inventions Agreement – require an inventorship

5

1    analysis that implicates federal law.  The *AT&T* decision cited by both sides suggests otherwise.

2    In that case, AT&T brought a state court action against four of its former employees[5] and

3    Integrated Network Corp. ("INC"), seeking title of a patent.  *Am. Tel. & Tel. Co. v. Integrated*

4    *Network Corp.*, 972 F.2d 1321, 1322 (Fed. Cir. 1992).  AT&T claimed that the four former

5    employees were contractually obligated to assign the patent to AT&T under an inventions

6    agreement but breached their contractual obligations by assigning the patent to INC instead.  The

7    inventions agreement obligated the four individual defendants to assign to AT&T all of their

8    rights in inventions conceived during their employment.  *Id.* at 1323.  The Federal Circuit held

9    that whether the invention was "conceived" during the individual defendants' employment did

10   not present a substantial question of patent law, noting that "when an invention was conceived

11   may be more a question of common sense than patent law."  *Id.* at 1324.  Accordingly, this Court

12   concludes that whether the patented inventions were "made or conceived" during Harari's term

13   of employment presents a factual question that does not implicate a substantial question of patent

14   law.

15          The subject matter limitation likewise can be resolved without reference to federal patent

16   law.  The question is whether the subject patented inventions "relate in any way to or are useful"

17   to WSI's business as conducted during Harari's term of employment.  This factual determination

18   will require a comparison of the patented inventions with WSI's business at the relevant time.  It

19   will not require any inventorship analysis.

20          Because it concludes that adjudication of Plaintiff's state law claims does not require

21   resolution of a substantial question of patent law, the Court will set aside its prior ruling and will

22   grant Plaintiff's motion for remand on the ground of lack of subject matter jurisdiction.  *See* 28

23   U.S.C. § 1447(c) (providing that "[i]f at any time before final judgment it appears that the district

24   court lacks subject matter jurisdiction, the case shall be remanded").  Defendants have requested

25   that, in the event the Court is inclined to reconsider the aspect of the March 20 Order discussed

26

27

28          [5] The individual defendants actually were employed by Bell Telephone Laboratories, a
     wholly owned subsidiary that merged into AT&T.

6

1  above, they be given an opportunity to seek reconsideration of other aspects of the March 20

2  Order. The Court has reexamined the complaint, all of the briefing to date, and the relevant

3  authorities, and concludes that there is no potential basis for reconsideration of the aspects of the

4  March 20 Order to which Defendants refer. Accordingly, the Court will not delay in remanding

5  the action to the Alameda County Superior Court.

6      In its motion for remand, Plaintiff requested an award of costs and attorneys' fees

7  pursuant to 28 U.S.C. § 1447(c). Although after reconsideration it has concluded that removal

8  was improper, the Court will deny Plaintiff's request because – as evidenced by the Court's

9  initial ruling – the removal was not objectively unreasonable. *See Martin v. Franklin Capital*

10 *Corp.*, — U.S. — , 126 S.Ct. 704, 711 (2005) (holding that "[a]bsent unusual circumstances,

11 courts may award attorney's fees under § 1447(c) only where the removing party lacked an

12 objectively reasonable basis for seeking removal").

13                                    **IV. ORDER**

14     (1)   Plaintiff's motion for reconsideration of the Court's March 20 Order is
             GRANTED;
15
16     (2)   the instant action is REMANDED to the Alameda County Superior Court;

17     (3)   Plaintiff's motion for costs and attorneys' fees is DENIED; and

18     (3)   the Clerk of the Court SHALL TRANSMIT the file in this action to the Alameda
             County Superior Court forthwith and SHALL CLOSE this Court's file.

19

20

21

22 DATED:  July 18, 2006

23
                                                _____
24                                              JEREMY FOGEL
                                                United States District Court
25

26

27

28

Case No. C 05-4691 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION ETC.
(JFLC2)

This Order has been served upon the following persons:

Edward V. Anderson    evanderson@sidley.com, nye@sidley.com

Steven S. Baik , Esq    sbaik@wsgr.com, cphillips@wsgr.com

Kevin P. Burke    kburke@sidley.com, sheila.brown@sidley.com

Teague I. Donahey    tdonahey@sidley.com, sheila.brown@sidley.com

Russell L. Johnson    rljohnson@sidley.com, sheila.brown@sidley.com

Michael A. Ladra    mladra@wsgr.com

Monica Mucchetti    mmucchetti@wsgr.com, dfernandes@wsgr.com

Bart Edward Volkmer , Esq    bvolkmer@wsgr.com

James C. Yoon    jyoon@wsgr.com, abaranski@wsgr.com; nfurino@wsgr.com

# Exhibit B

1

**E-filed 3/20/06**

2

3

4

5

6

7

NOT FOR CITATION

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN JOSE DIVISION**

11

12

STMICROELECTRONICS, INC.,

Case Number C 05-4691 JF

13

Plaintiff,

ORDER[1] DENYING PLAINTIFF'S

14

MOTION TO REMAND

v.

15

[Docket No. 22]

ELIYAHOU HARARI, et al.,

16

Defendants.

17

18

19

**I. BACKGROUND**

20

On August 1, 1983, Eliyahou Harari ("Harari") co-founded a company called Wafer Scale

21

Integration ("WSI"), which sells and designs programmable system devices, including memory

22

systems and nonvolatile memories. Complaint ("Compl.") ¶¶ 6, 9. On February 22, 1984, Harari

23

signed an Employee Agreement Regarding Confidentiality and Inventions ("Inventions

24

Agreement").[2] Compl., Ex. A. Until his resignation, Harari held numerous positions within

25

26

[1]    This disposition is not designated for publication and may not be cited.

27

[2]    Pursuant to this agreement, Harari represented that:

28

1.    All previous work done by me for [WSI] in any way to the

Case No. C 05-01281 JF
ORDER DENYING PLAINTIFF'S MOTION TO REMAND
(JFEX1)

1    WSI, including employee, chief executive officer, chief technology officer ("CTO"), director,

2    chairman of the board, and consultant. Compl. ¶¶ 9, 11, 20.

3        During his tenure as CTO, Harari began developing flash memory products. Comp. ¶¶ 6,

4

5
         conception, design, development or support of products for [WSI]
6        is the property of [WSI].

7        2.    I will maintain in confidence and will not disclose or use,
         either during or after the term of my employment without the prior
8        written consent of [WSI], any proprietary or confidential
         information or know-how belonging to [WSI] ("Proprietary
9        Information"). . . . Upon termination of my employment or at the
         request of my supervisor before termination, I will deliver to [WSI]
10       all written and tangible material in my possession incorporating the
         Proprietary Information or otherwise relating to [WSI's] business.
11

12       3.    I will promptly disclose and describe to [WSI] (i) all
13       inventions, improvements, discoveries and technical developments
         ("Inventions"), whether or not patentable, made or conceived by
14       me, either alone or with others, during the term of my employment,
         provided that [WSI] shall receive such information in confidence.
15       I hereby assign and agree to assign to [WSI] my entire right, title
         and interest in and to such Inventions which relate in any way to or
16       are useful in [WSI's] business as presently conducted or as
         conducted at any future time during my employment, and agree to
17       cooperate with [WSI] . . . both during and after my employment in
         the procurement and maintenance . . . and/or other protection of
18       [WSI's] rights in such inventions. I will keep and maintain
         adequate and current written records of all such Inventions, which
19       shall and remain the property of [WSI].
20

21       4.    (a) There is no other contract or duty on my part now in
22       existence to assign Inventions.

23       (b) I will not disclose or induce [WSI] to use any
         confidential information or material that I am now or shall become
24       aware of which belongs to anyone other than [WSI].
25
         (c) During my employment by [WSI], I will not engage in
26       any employment, consulting or other activity in any business
         without [WSI's] express written agreement.
27

28   Compl., Ex. A, ¶¶ 1-4.

                                        2

17.  Harari later resigned from his employment, but he continued as a director and consultant

pursuant to a Consulting and Directorship Agreement ("Consulting Agreement") signed February

29, 1988.  Compl. ¶¶ 20-21; *see* Compl., Ex. C.  In the Consulting Agreement, Harari reaffirmed

to the obligations that the Inventions Agreement previously imposed.  Compl. ¶ 21; *see* Compl.,

Ex. C.

　　　　While serving as a director and consultant to WSI, Harari filed four patent applications.

Comp. ¶¶ 24-27.[3]  On March 21, 1989, Harari resigned from WSI's board of directors and

requested that his resignation be back-dated to March 15, 1989.  Compl. ¶ 28.  Before the board

of directors accepted his resignation, Harari filed two more patent applications.[4]  Compl. ¶ 29.

In or about June, 1988, Harari founded SanDisk Corp. ("SanDisk"), which began developing

flash memory products.  Compl. ¶¶ 40, 42.  Harari later assigned his six pending patent

applications to SanDisk.  Compl. ¶ 45.  On May 17, 1989, without knowledge of his six patent

applications, WSI's board of directors accepted Harari's letter of resignation and agreed to back-

date his resignation.  Compl. ¶ 31.  ST alleges that Harari disclosed only *one* patent application to

WSI during his tenure.  Compl. ¶ 35.

　　　　In July, 2000, STMicroelectronics, Inc. ("ST") merged with WSI, and ST succeeded to all

of WSI's rights and property.  Compl. ¶ 7.  On October 15, 2004, SanDisk filed two complaints

---

[3]　　　　On April 26, 1988, Harari filed Patent Application 07/185,699 with the United
States Patent and Trademark Office ("PTO"), which resulted in U.S. Patent 4,933,739, entitled
"Trench resistor structures for compact semiconductor memory and logic devices."  On June 8,
1988, Harari filed Patent Application 07/204,175 with the PTO, which resulted in twenty-two
issued patents.  On July 8, 1988, Harari filed Patent Application 07/216,873 with the PTO, which
resulted in three issued patents.  On March 15, 1989, Harari filed Patent Application 07/323,779
with the PTO, which resulted in U.S. Patent 5,070,032, entitled "Method of making dense flash
EEPROM semiconductor memory structures."  These patents relate to WSI's flash memory
products.  Compl. ¶¶ 24-27

[4]　　　　On April 13, 1989, Harari filed two additional patent applications with the PTO.
Patent Application 07/337,566 resulted in the issuance of twenty-one patents and Patent
Application 07/337,579 resulted in the issuance of two patents.  These patents relate to flash
memory devices under development at WSI.  Compl. ¶ 30.

3

alleging that ST infringed U.S. Patent 5,172,338.[5]  Compl. ¶ 46.  On October 14, 2005, ST filed a complaint in the California Superior Court against Harari, SanDisk, and Does 1-20 (collectively "Defendants").  ST asserts: (1) breach of fiduciary duty; (2) breach of written contract; (3) fraud; (4) conversion; (5) inducing breach of contract; (6) unjust enrichment; and (7) unfair competition under California Business & Professions Code § 17200.  The complaint states that "[a]ll of the causes of      action . . . arise under state law.  None of the causes of action . . . are created by federal law, including the patent laws of the United States."  On November 15, 2005, Defendants removed the case to this Court based on their assertion that "the complaint raises a federal question and this is a civil action arising under the laws of the United States."  On November 23, 2005, Defendants filed an answer and counterclaim.

On December 12, 2005, ST filed the instant motion pursuant to 28 U.S.C. § 1447(c).  ST asserts that: (1) the Court lacks subject matter jurisdiction; (2) it should be awarded its costs and actual expenses, including attorney's fees, incurred as a result of the removal; and (3) pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants' counterclaim also should be dismissed for lack of subject matter jurisdiction.  Defendants oppose the motion.

Having considered the briefs, relevant evidence, and the oral arguments at the hearing on February 17, 2006, the Court will deny the motion to remand.

## II.  LEGAL STANDARD

Section 1441(b) permits removal of "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States . . . ."  28 U.S.C. § 1441(b).  Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. . . . The State court

---

[5]      *In the Matter of Certain NAND Flash Memory Circuits and Products Containing Same*, Investigation No. 337-TA-526, was filed before the United States International Trade Commission ("the ITC action").  *SanDisk Corp. v. STMicroelectronics, Inc.*, C04-04379 JF, was filed in this Court, Compl. ¶ 46, and was stayed pending the outcome of the ITC action.

Case No. C 05-01281 JF
ORDER DENYING PLAINTIFF'S MOTION TO REMAND
(JFEX1)

1    may thereupon proceed with such case." 28 U.S.C. § 1447(c). However, "[t]he district courts

2    shall have original jurisdiction of any civil action *arising under* any Act of Congress relating to

3    patents. . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases."

4    28 U.S.C. § 1338(a) (emphasis added).

5        Defendants have the burden of establishing that removal was proper under 28 U.S.C.

6    § 1441. *See, e.g., Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). "Because of the

7    Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is

8    strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of

9    removal in the first instance." *Id.* (citations and internal quotations omitted). The law of the

10   Federal Circuit controls this case because jurisdiction is based upon 28 U.S.C. § 1338. *Panduit*

11   *Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573 (Fed Cir. 1984), *overruled on other*

12   *grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).

**III. DISCUSSION**

13

14   A.    *Christianson* Standard

15       The Supreme Court in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809

16   (1988), devised a two prong test to determine whether an action "arises under" the patent laws.

17   First, if the federal patent "creates the cause of action" then the action "arises under" the patent

18   laws. *Id.* Plaintiff "is the master of the claim; he or she may avoid federal jurisdiction by

19   exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A

20   court must review and analyze the plaintiff's pleadings, with special attention directed to the

21   relief requested by the plaintiff, in making the determination as to whether a cause of action

22   arises under the patent laws . . . ." *Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*, 755 F.2d

23   1559, 1562 (Fed. Cir. 1985).

24       Second, federal question jurisdiction extends even to state law causes of action if

25   plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal

26   patent law, in that patent law is a necessary element of one of the well-pleaded claims."

27   *Christianson*, 486 U.S. at 801. "[M]erely because a claim makes no reference to federal patent

28   law does not necessarily mean the claim does not 'arise under' patent law. Just as a 'plaintiff

1    may not defeat removal by admitting to plead necessary federal questions in a complaint,' so a

2    plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law

3    questions." *Id.* at 809 n.3 (citations omitted).

4         In sum, under *Christianson*'s two prong test, an action "arises under" the patent laws if

5    the complaint pleads that: (1) federal patent law "creates the cause of action"; or (2) the

6    plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal

7    patent law, in that patent law is a necessary element of one of the well-pleaded claims." 486 U.S.

8    at 801, 809.  Here, no patent statute creates any of the causes of action ST asserts.  Defendants

9    concede that "ST's complaint does not meet the first prong of the *Christianson* test in that federal

10   patent law does not 'create' the causes of action asserted by     ST . . . ." Opposition to Remand at

11   4 ("Opposition").

12   _____Under *Christianson*'s second prong, however, federal jurisdiction exists if ST's right to

13   relief "necessarily depends on resolution of a substantial question of federal patent law, in that

14   patent law is a necessary element of one of the well-pleaded claims." 486 U.S. at 801, 809.

15   "Claims concerning patent ownership do not create federal jurisdiction." *Prize Frize, Inc. v.*

16   *Matrix (U.S.), Inc.*, 167 F.3d 1261, 1264 (9th Cir. 1999); *see Jim Arnold Corp. v. Hyrotech Sys.,*

17   *Inc.*, 109 F.3d 1567, 1572 (Fed Cir. 1997) ("It may seem strange at first blush that the question of

18   whether a patent is valid and infringed ordinarily is one for federal courts, while the question of

19   who owns the patent rights and on what terms typically is a question exclusively for state courts.

20   Yet that long has been the law.  It is well settled that if the patentee pleads a cause of action

21   based on rights created by a contract, or on the common law of torts, the case is not one 'arising

22   under' the patent laws.").

23        Ownership and inventorship issues are completely separate issues. *Beech Aircraft Corp.*

24   *v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993).  Ownership "is a question of who owns

25   legal title to the subject matter in a patent," while "inventorship is a question of who actually

26   invented the subject matter claimed in a patent." *Id.*  A substantial federal question is raised

27   when ownership arises from the patent law issue of inventorship. *MCV, Inc. v. King-Seely*

28   *Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989).

6

1    _____ST asserts that the issue of ownership typically is a question exclusively for state courts.

2    Motion to Remand at 12.  Defendants argue that "[i]nventorship issues will also have to be

3    resolved in order to determine whether ownership of the patents . . . should be assigned to ST."

4    Opposition at 8.  This Court has jurisdiction if ST's well-pleaded complaint necessarily requires

5    resolution of the question of inventorship.

6    _____1.    *Rustevader*

7    _____In *Rustevader Corp. v. Cowatch*, 842 F.Supp. 171, 173 (W.D. Pa. 1993), the plaintiffs

8    asserted in their remand motion that they were seeking a mere determination of ownership rather

9    than a determination of inventorship.  Plaintiffs employed Cowatch, Jr. ("Cowatch Jr.") from

10   September 15, 1985, until August 16, 1986.  *Id.* at 171.  On August 30, 1988, Cowatch Jr. and

11   Cowatch, Sr. ("Cowatch Sr.") were issued a patent as joint inventors ("the Cowatch patent")

12   based upon a patent application filed December 3, 1986.  *Id.*  Plaintiffs filed a complaint in state

13   court against both Cowatch Jr. and Cowatch Sr. claiming that Cowatch Jr. breached the terms of

14   his employment agreement with plaintiffs.  *Id.*  In its complaint, plaintiffs sought "an award

15   directing both defendants to assign the Cowatch patent" to plaintiffs.  *Id.* at 172.  The district

16   court held that:

17           Although the plaintiffs contend that this Court lacks jurisdiction
             based upon their decision to plead claims for breach of contract,
18           they fails to explain how this case arises solely out of a contract
             when one of the defendants, Cowatch Sr., is not a party to the
19           contract in question.  Plaintiffs have not cited any authority for
             such a proposition and have failed to address, in any way,
20           defendant Cowatch Sr.'s presence in this action.  In fact, plaintiffs
             do not assert anywhere in their complaint that Cowatch Sr.
21           breached any contractual provision.  Moreover, plaintiffs' motion
             to dismiss petition for removal alleges only that Cowatch Jr.
22           breached a contract.

23   *Id.* at 173.  In denying plaintiffs' motion to remand to state court, the district court held that

24   although federal law did not create plaintiffs' claims, the complaint "necessarily depends on the

25   resolution of a substantial federal question," i.e. the determination of inventorship.  *Id.* at 174.

26   Thus, because Cowatch Sr. was not in contractual privity with the plaintiffs, the plaintiffs could

27   only obtain assignment of the entire patent if Cowatch Jr. was the sole inventor.  *Id.* at 173-74.

28           Although Defendants argue otherwise, *Rustevader* is not "directly analogous" to this case

7

Case No. C 05-01281 JF
ORDER DENYING PLAINTIFF'S MOTION TO REMAND
(JFEX1)

and *Rustevader*'s rationale for finding federal question jurisdiction is not "precisely the same" as the basis for federal jurisdiction here. *See* Opposition at 7. In *Rustevader*, both Cowatch Jr. and Cowatch Sr. were named as defendants, which created a contractual privity problem between the plaintiffs and Cowatch Sr. 842 F.Supp. at 171, 173-74. As the court stated, "[i]f Cowatch Jr. was the sole defendant in this case, this Court would, as plaintiffs argue, lack jurisdiction." *Id.* at 173. In this case, while ST does not dispute that persons other than Harari are listed as inventors on several of the patents, ST seeks assignment of only Harari's rights. The contractual privity problem that was determinative in *Rustevader* does not arise in this case.

      2.   <u>California Business & Professions Code § 17200</u>

Defendants contend that substantial issues of patent law will "need to be resolved in order for ST to prevail on its claim that SanDisk violated California Business and Professions Code section 17200, *et seq*." Opposition at 11. As the Supreme Court explained:

> Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential. If "on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks," then the claim does not "arise under" those laws. Thus, a claim supported by *alternative theories* in the complaint may *not* form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories.
>
> Framed in these terms, our resolution of the jurisdictional issue in this case is straightforward. Petitioners' antitrust count can readily be understood to encompass both a monopolization claim under § 2 of the Sherman Act and a group-boycott claim under § 1. The patent-law issue, while arguably necessary to at least one theory under each claim, it is not necessary to the overall success of either claim.

*Christianson*, 486 U.S. at 810 (citations excluded and emphasis added).

Here, ST may rely on state or federal law for purposes of its Section 17200 claim. ST's claim expressly relies on breaches of state law fiduciary and contractual obligations. Thus, to the extent that the instant case does present a patent law issue, resolution of that issue is not necessary to the overall success of the Section 17200 claim.

8

1       3.      _AT&T_

2       Defendants next assert that inventorship issues will have to be resolved "in order to

3   determine whether ownership of the patents that issued from the Disputed Applications should be

4   assigned to ST . . . ." Opposition at 8.  Specifically, Defendants rely on _Am. Tel. & Tel. Co.  v._

5   _Integrated Network Corp._, 972 F.2d 1321 (Fed. Cir. 1992) [hereinafter _AT&T_], for the

6   proposition that ST must show that "certain of the inventions claimed in the patent were

7   'conceived' by Harari during his tenure with WSI and 'relate to' WSI's business such that Harari

8   had an obligation to assign them under his contract with WSI."  Opposition at 8.

9       In _AT&T_, AT&T sued Integrated Network Corp. ("INC") and four former employees in

10  state court to obtain title to a patent.  972 F.2d at 1322.  AT&T claimed that the four former

11  employees breached their invention assignment agreement ("agreement") when they assigned to

12  INC a patent to an invention that they conceived to while working for AT&T.  _Id._ at 1322-23.

13  Pursuant to the agreement, the employees agreed to assign to AT&T all of their rights to

14  inventions conceived of during their employment.  _Id._ at 1323.  INC removed the case to the

15  district court, and AT&T filed a motion to remand, arguing lack of federal jurisdiction because

16  AT&T's claims were state law contract and tort claims.  _Id._  In denying the motion to remand,

17  the district court held that: (1) "to recover, AT & T would necessarily have to prove when the

18  invention was conceived, that is, either while the inventors were employees of AT & T or of

19  INC"; and (2) absent evidence to the contrary, the word "conceived," as used in the agreement,

20  must be given its technical meaning rather than a broad, non-patent meaning.  _Id._

21      On appeal, the Federal Circuit held that there was not a substantial question of patent law,

22  concluding that the agreement's use of the terms "inventions" and "conceived" did not

23  necessarily mean that the agreement was intended to cover only patentable inventions.  _Id._ at

24  1324.  As the court explained, "if what the employees 'conceived' at AT & T had not been

25  patentable, or no patent had been sought, but it nevertheless was treated as a trade secret, their

26  conduct still could have been in breach of the [agreement]."  In other words, the [agreement] may

27  have used conception in its generic, broadest sense."  _Id._  The court concluded, "[b]ecause

28  'inventions [and] conceived' has both patent and general law meanings, AT & T may rely on one

9

1   theory with patent connotations, and on another theory involving no patent question." *Id.*

2       It is clear from ST's prayer for relief that it seeks "ownership of all patents which issued

3   or claim priority from the applications filed by Harari during and after his tenure as an officer

4   and/or director of WSI, which should have properly been assigned to WSI, be assigned to [ST],

5   as the sole owner if Harari is the sole inventor or as a co-owner if Harari is a co-inventor[.]"

6   Compl. at 18.  Defendants' contention that "ST asks that SanDisk assign to ST *all* patents" from

7   the disputed applications misconstrues ST's prayer for relief.  Opposition at 5.  As ST suggests,

8   "[b]y its Complaint, ST seeks assignment only of the *interest* in those patents which *originally*

9   *belonged to Harari*, and were wrongfully assigned by him to SanDisk, rather than WSI.  ST's

10  complaint makes *no claim* to ownership interests derived from Harari's co-inventors, whether or

11  not those interests have since been assigned to SanDisk."  Reply at 3-4 (emphasis added).

12      This does not end the inquiry, however.  To reach the ownership issue the patents first

13  must undergo an inventorship analysis to uncover what exactly Harari contributed to each

14  invention. While it was undisputed in *AT&T* that the former employees had full inventorship in

15  the patent at issue, ST cannot at this time establish what patented inventions or parts thereof

16  Harari "conceived" during his employment with WSI, nor can ST establish what inventions

17  "relate to" WSI's business, unless Harari's inventive contribution to each patent first is

18  identified.  The question of whether the interest in a particular patent should have been assigned

19  to WSI arises only after Harari's inventive contribution to each patent has been identified.

20  Accordingly, because determination of inventorship is critical to determination of ownership,

21  Defendants have shown that ST's right to relief "necessarily depends on resolution of a

22  substantial question of federal patent law, in that patent law is a necessary element of one of the

23  well-pleaded claims."[6]  *See Christianson*, 486 U.S. at 809.

24

25

26

---

27          [6]     As to Defendants' counter-claim, a patent law counter-claim does not create
    federal patent jurisdiction under Section 1338.  *See Holmes Group, Inc. v. Vornado Air*
28  *Circulation Sys.*, 535 U.S. 826, 831 (2002).

10

# IV.  ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that ST's motion to remand to state court is DENIED.

IT IS SO ORDERED.


DATED: March 20, 2006

_____
JEREMY FOGEL
United States District Court

11

This Order has been served upon the following persons:

Russell L. Johnson, Matthew Laurence McCarthy
Sidley Austin LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Email: rljohnson@sidley.com
Email: MLMcCarthy@sidley.com

James C. Yoon, Michael A. Ladra, Steven S. Baik, Monica Mucchetti
Wilson Sonsini Goodrich & Rosati
650 Page Mill Rd
Palo Alto, CA 94304-1050
Email: jyoon@wsgr.com
Email: mladra@wsgr.com
Email: sbaik@wsgr.com
Email: mmucchetti@wsgr.com

12

# Exhibit C

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Russell L. Johnson (SBN 53833)<br>Sidley Austin LLP<br>555 California St. Suite 2000<br>San Francisco, CA 94104<br>TELEPHONE NO.: (415) 772-1200   FAX NO. *(Optional):* (415) 772-7400<br>E-MAIL ADDRESS *(Optional):* rljohnson@sidley.com<br>ATTORNEY FOR *(Name):* Plaintiff, STMicroelectronics, Inc. | P 3:<br><br>M. Rosales |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SANTA CLARA

STREET ADDRESS:  191 N. First Street

MAILING ADDRESS:

CITY AND ZIP CODE:  San Jose, CA 95113

BRANCH NAME:  Downtown Superior Court

PLAINTIFF/PETITIONER:  STMicroelectronics, Inc.

DEFENDANT/RESPONDENT:  Eliyahou Harari, et al.

| CASE MANAGEMENT STATEMENT | | CASE NUMBER: |
|---|---|---|
| **(Check one):**  ☑ **UNLIMITED CASE**<br>(Amount demanded<br>exceeds $25,000) | ☐ **LIMITED CASE**<br>(Amount demanded is $25,000<br>or less) | 1-07-CV-080123 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:  May 8, 2008      Time:  10:00 a.m.     Dept.:  10      Div.:      Room:

Address of court *(if different from the address above):*

---

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☑  This statement is submitted by party *(name):*  Plaintiff, STMicroelectronics, Inc.
   b. ☐  This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*  October 14, 2005
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☑  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*
      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐  have had a default entered against them *(specify names):*
   c. ☑  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*
      Irwin Federman.  See Attachment 3c for further discussion.

4. **Description of case**
   a.  Type of case in  ☑ complaint  ☐ cross-complaint      *(describe, including causes of action):*
      See Attachment 4a.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: STMicroelectronics, Inc. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Eliyahou Harari, et al. | 1-07-CV-080123 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

    See Attachment 4b.

    ☑ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request   ☑ a jury trial   ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☑ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
    See Attachment 6b.
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☑ days *(specify number):*  10
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial  ☑ by the attorney or party listed in the caption  ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☑ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| | |
|---|---|
| PLAINTIFF/PETITIONER: STMicroelectronics, Inc. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Eliyahou Harari, et al. | 1-07-CV-080123 |

10. d.    The party or parties are willing to participate in *(check all that apply)*:
    (1) ☑ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights: ☐ Yes ☐ No
    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**
    a. ☑ There are companion, underlying, or related cases.
        (1) Name of case: See Attachment 14a for list of related cases.
        (2) Name of court:
        (3) Case number:
        (4) Status:
    ☑ Additional cases are described in Attachment 14a.
    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
    ☑ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

    See Attachment 16.

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: STMicroelectronics, Inc. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Eliyahou Harari, et al. | 1-07-CV-080123 |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☑ The following discovery will be completed by the date specified (*describe all anticipated discovery*):

| Party | Description | Date |
|---|---|---|
| See Attachment 17b. | | |

   c. ☑ The following discovery issues are anticipated (*specify*):

      See Attachment 17c.

**18. Economic Litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (*if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case*):

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference (*specify*):

**20. Meet and confer**

   a. ☑ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (*if not, explain*):

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (*specify*):

**21. Case management orders**

   Previous case management orders in this case are (*check one*): ☑ none ☐ attached as Attachment 21.

**22.** Total number of pages attached (*if any*):   10

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: April 28, 2008

Russell L. Johnson
_____
     (TYPE OR PRINT NAME)

▶ *Russell L Johnson / DDN*
_____
     (SIGNATURE OF PARTY OR ATTORNEY)

_____
     (TYPE OR PRINT NAME)

▶
_____
     (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

## ATTACHMENT 3c

### Additional Parties to be Added

A general description of the case is contained in Attachment 4a and is incorporated herein by reference. Plaintiff STMicroelectronics, Inc. ("ST") is scheduled to take the deposition of Irwin Federman on May 16, 2008. After that deposition, ST hopes to have sufficient information to determine whether Mr. Federman should be added as a defendant. Irwin Federman was on the board of directors of ST's predecessor, WSI, and SanDisk at the same time. Defendants have indicated that Mr. Federman may have been aware of Harari's failure to assign the inventions at issue. If Mr. Federman was aware of Harari's breach of his contractual agreement to assign inventions, and if Mr. Federman did not disclose this failure to WSI, then Mr. Federman also breached his fiduciary obligations to WSI.

**ATTACHMENT 4a**

Description of Case

ST's Complaint includes claims for damages and equitable relief, including the following counts: (1) breach of fiduciary duty; (2) breach of written contract; (3) fraud; (4) conversion; (5) inducing breach of contract; (6) unjust enrichment; and (7) unfair competition under Cal. Bus. & Prof. Code sec. 17200 et seq.

ST's claims are based upon allegations that Harari misappropriated patented inventions from WSI (to which ST is successor-in-interest) and instead assigned the inventions to SanDisk. Harari, while an employee, officer, consultant, and director of WSI, signed an Employee Agreement Regarding Confidentiality and Inventions (the "Inventions Agreement"), which obligated him to disclose and assign any inventions to WSI, whether patentable or not. Subsequently, Harari and WSI entered into an Agreement (the "Consulting and Directorship Agreement") under which Harari resigned from WSI as an employee but continued to act as a consultant and a member of WSI's Board of Directors. Under the Consulting and Directorship Agreement, Harari agreed to continue to be bound by and comply with the terms of the Inventions Agreement.

While still acting as a member of WSI's Board of Directors and still obligated to disclose and assign any inventions to WSI, Harari filed patent applications claiming flash memory-related inventions, but did not disclose those patent applications to WSI as he was obligated to do. Instead, while still a director of WSI, Harari founded SanDisk, which began work on flash memory, and assigned the flash memory patent rights to SanDisk. Such conduct not only breached the Inventions Agreement, it operated to benefit a company in direct competition with WSI at a time when Harari owed fiduciary duties to WSI. One of the resultant SanDisk patents, the '338 patent, has been asserted by SanDisk against ST in separate litigation.

2

## ATTACHMENT 4b

### Statement of the Case, Including Damages

After ST had filed its Complaint on October 14, 2005 and on October 27, 2005, ST served the following discovery requests on Defendants: (i) ST's Request for Production of Documents and Other Tangible Things (SET ONE); (ii) ST's Request for Admissions (SET ONE); (iii) ST's Form Interrogatories (SET ONE); and (iv) ST Form Interrogatories – Economic Litigation (SET ONE).

Defendants subsequently removed this action to federal court where it remained until July 2006 when Judge Jeremy Fogel remanded the case to state court because there was no basis for federal jurisdiction. While in federal court, Defendants refused to provide any discovery. After remand, ST requested that Defendants respond to the discovery requests served before removal. Defendants then served objections to all of ST's requests, contending once again that Defendants did not have to respond to discovery until *after* "case dispositive" motions were heard.

Meanwhile, Defendants filed two other motions that they used as an additional basis to withhold discovery: (i) a motion to transfer venue from Alameda County to Santa Clara County; and (ii) an anti-SLAPP motion to strike the unfair competition count in ST's complaint. The Superior Court, however, denied both motions.

Defendants then filed a petition for writ of mandate seeking review of the venue ruling, and a notice of appeal from the denial of SanDisk's anti-SLAPP motion. Pending resolution of the venue issue, the Court of Appeal stayed all proceedings. After the Court of Appeal issued an alternative writ of mandate, the Alameda County court transferred venue to Santa Clara County, and the stay of proceedings dissolved.

ST once again approached Defendants about discovery proceeding, and Defendants responded by filing a motion to stay all discovery pending the disposition of the anti-SLAPP appeal. Defendants' motion for a stay was granted by this Court on April 3, 2007.

On August 7, 2007, the Court of Appeal affirmed the denial of SanDisk's special motion to strike. A copy of the decision is attached hereto as Appendix A. Just like the Alameda County Superior Court, the Court of Appeal concluded that ST's Section 17200 claim against SanDisk was not directed to protected activity.

On September 17, 2007, SanDisk filed a Petition for Review with the Supreme Court of California seeking review of the Court of Appeal's opinion affirming the denial of SanDisk's special motion to strike. On November 14, 2007, the Supreme Court of California denied SanDisk's petition for review. The Court of Appeal has received the file from the Supreme Court and will be issuing the remittitur soon. As a result, it is ST's position that discovery should proceed immediately and that this case should be set for trial at this time.

ST seeks actual, incidental, consequential, exemplary, and punitive damages in an amount to be proven at trial. For example, as a result of Harari's failure to disclose and assign

3

the relevant patent applications to WSI, WSI and its successors (such as ST) suffered injury through their loss of intellectual property in the patents that resulted from such applications, as well as the profits, royalties, and other benefits generated by those patents. ST also has had to defend itself from allegations of infringement regarding patents issuing from Harari's applications, resulting in pecuniary loss.

With respect to equitable relief, ST seeks specific performance of contract and restitution (for example, under Cal. Bus. & Prof. Code § 17203). Such relief would include an order requiring that (1) ownership of all patents which issued or claim priority from the applications filed by Harari during and after his tenure as an officer and/or director of WSI, which should have properly been assigned to WSI, be assigned to ST, as the sole owner if Harari is the sole inventor, or as a co-owner if Harari is a co-inventor; and (2) all inventions and the patents relating thereto which were conceived of or resulted from inventive activity on the part of Harari, that took place while Harari was an employee, officer, and/or director of WSI, be assigned to ST.

ST also seeks its costs, attorneys' fees, pre-judgment and post-judgment interest, and any other and further relief that the Court deems proper.

4

## **ATTACHMENT 6b**

### Trial Date

ST proposes that the court adopt the following schedule for trial:

November 7, 2008:  Close of fact discovery
November 21, 2008:  Service of opening expert reports
December 19, 2008:  Service of rebuttal expert reports
January 7-23, 2008:  Expert depositions
February 9, 2008:  Trial

## ATTACHMENT 14a

Related Cases

This action stems from patent applications that were stolen from WSI (and thus its successor ST) and assigned to SanDisk. SanDisk has brought several dismissed or pending patent infringement lawsuits against ST based on patents that issued from these patent applications. A summary of the litigation involving these SanDisk patents follows:

- *In the Matter of Certain NAND Flash Memory Circuits and Flash Memory Cards Containing Same*, Inv. No. 337-TA-526 (U.S. International Trade Commission) (filed October 15, 2004). This was the first ITC action brought against ST. In this action, SanDisk asserted the Harari '338 patent. After an investigation and evidentiary hearing before an administrative law judge, the ITC determined that ST does not infringe the '338 patent and terminated the investigation.

- *In the Matter of Certain NOR and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-560 (U.S. International Trade Commission) (filed January 10, 2006). This was the second ITC action brought against ST. In this action, SanDisk asserted the Harari '338 and '517 patents. After an investigation and evidentiary hearing before an administrative law judge, the ITC determined that no violation existed and terminated the investigation.

- *SanDisk Corp. v STMicroelectronics, Inc., et al.*, No. C 04-4379 JF (U.S. District Court for the Northern District of California) (filed October 15, 2004) and No. C 05-5021 JF (U.S. District Court for the Northern District of California) (filed December 6, 2005) (cases consolidated by Judge Fogel on June 29, 2007). SanDisk filed this patent infringement action against ST alleging infringement of the Harari '338 and '517 patents and other claims. This action is currently pending.

- *STMicroelectronics, Inc. v. SanDisk Corp.*, No. C 05-0045 MHS (U.S. District Court for the Eastern District of Texas) (filed February 4, 2005). ST filed this patent infringement action against SanDisk alleging infringement of U.S. Patent Nos. 5,073,816; 6,100,581; 4,698,720; 4,839,768; 6,259,626; and 6,643,184. SanDisk filed counterclaims in this action asserting that ST infringed the Harari '808 and '812 patents. Both parties have dismissed all claims with prejudice.

## ATTACHMENT 16

Other Motions

Pursuant to an order of the Court dated February 6, 2008 Defendants are scheduled to file a motion for summary judgment on the statute of limitations on May 15, 2008 which will be heard on July 10, 2008.

# ATTACHMENT 17b

## Anticipated Discovery

ST will seek discovery from Defendants primarily in the form of document requests, interrogatories, depositions, and requests for admission. On October 27, 2005, ST served the following discovery on Defendants:

- Request for Production of Documents and Other Tangible Things (SET ONE)
- Request for Admissions (SET ONE)
- Form Interrogatories (SET ONE)
- Form Interrogatories – Economic Litigation (SET ONE)

Following Defendants' improper removal of the action to federal court, ST also served the following discovery on Defendants:

- First Set of Document Requests to SanDisk and Harari
- First Set of Requests for Admissions to Harari and SanDisk (Nos. 1-74)
- First Set of Interrogatories to Harari (Nos. 1-2)
- First Set of Interrogatories to SanDisk (Nos. 1-2)
- Subpoena *Duces Tecum* to Irwin Federman [7 document requests]
- Notice of Deposition of Irwin Federman [scheduled for June 27, 2006]
- Notice of Deposition of Eli Harari [scheduled for June 28, 2006]

After the case was remanded to Alameda County Superior Court, ST served the following discovery on Defendants:

- Notice of Deposition Subpoena for Production of Business Records to Parsons Hsue & de Runtz LLP [scheduled for November 20, 2006]
- Notice of Deposition Subpoena for Production of Business Records to Parsons Hsue & de Runtz LLP [scheduled for March 22, 2007]

Numerous discovery disputes have arisen and were addressed in motions to compel by the parties. The motions were heard on April 18, 2008 but no final order has issued. On April 24, 2008, ST served the following additional discovery on Defendants:

- Form Interrogatories-General to Harari (SET ONE)
- Form Interrogatories-Economic Litigation to Harari (SET ONE)
- Third Set of Requests for the Production of Documents to SanDisk
- First Set of Requests for Admission to Harari

## ATTACHMENT 17c

### Anticipated Discovery Issues

Thus far, this action has been vigorously defended. ST believes Defendants will continue to erect obstacles to ST's discovery, and ST anticipates that numerous discovery disputes are likely and that motions to compel will likely be necessary.

Non-party Davis Wright Tremaine LLP ("Davis Wright") was served with a deposition subpoena for the production of business records on March 14, 2008. Davis Wright has produced documents to counsel for Defendants for privilege review but counsel for Defendants have not produced non-privileged responsive documents in an expeditious manner. It is anticipated that ST will file a motion to compel to resolve this dispute.

# ATTACHMENT 20b

## Agreements Reached by the Parties

The parties have previously met and conferred on several occasions throughout this case. It is ST's understanding that the parties have agreed on the following: The parties will engage in private mediation in an effort to resolve their dispute at the appropriate time (likely to be at a later stage of the proceedings, once additional discovery has been taken and dispositive motions, if any, have been filed).

1  Russell L. Johnson (SBN 053833)
2  Edward V. Anderson (SBN 083148)
   Teague I. Donahey (SBN 197531)
   SIDLEY AUSTIN LLP
3  555 California Street
   San Francisco, California 94104
4  Telephone:     (415) 772-1200
   Facsimile:     (415) 772-7400
5
   James P. Bradley (SBN 056308)
6  Li Chen (*Pro Hac Vice*)
   SIDLEY AUSTIN LLP
7  717 North Harwood
   Dallas, Texas 75201
8  Telephone:     (214) 981-3300
   Facsimile:     (214) 981-3400
9
   Attorneys for Plaintiff
10 STMicroelectronics, Inc.

M. Rosales

11                SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     FOR THE COUNTY OF SANTA CLARA

13

14 STMICROELECTRONICS, INC., a corporation )   Case No. 1-07-CV-080123
                                            )
15              Plaintiff,                   )   **PROOF OF SERVICE**
                                            )
16        v.                                 )
                                            )
17 ELIYAHOU HARARI, an individual;           )
   SAN DISK CORPORATION, a corporation;      )
18 and DOES 1 through 20, inclusive,         )
                                            )
19              Defendants.                  )
                                            )
20 _____ )

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I declare I am over the age of 18 years, and not a party to this action. My place of employment and business address is Sidley Austin LLP, 555 California Street, Suite 2000, San Francisco, California 94104.

On April 28, 2008, I served copies of the following document(s) entitled:

1.  **Plaintiff STMICROELECTRONICS, INC.'s CASE MANAGEMENT STATEMENT**

on the following individuals and entities, as addressed below, by the means indicated below:

> Michael A. Ladra, Esq. .
> Wilson Sonsini Goodrich & Rosati
> 650 Page Mill Road
> Palo Alto, CA 94304
> Telephone: 650-493-9300
> Facsimile: 650-493-6811

☐ (BY MAIL) I am personally and readily familiar with the business practice of Sidley Austin LLP for collection and processing of correspondence for mailing with the United States Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, proper postage prepaid, with the United States Postal Service. I caused such document(s) to be sent via U.S. Mail according to the practices above.

☐ (BY EMAIL) I caused the above document(s) to be transmitted by email to the addresses listed above.

☐ (BY FEDERAL EXPRESS) I caused the above document(s) to be sent by Federal Express for priority overnight delivery. The above-mentioned document(s) would have been deposited with Federal Express with all charges paid.

☒ (BY HAND DELIVERY) I caused the document(s) to be delivered by hand to the addressees shown above at the addresses shown above, unless otherwise noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 28, 2008.

_____
Evy Leiva

2

# Exhibit D

MICHAEL A. LADRA, State Bar No. 064307
TERRY T. JOHNSON, State Bar No. 121569
JAMES C. YOON, State Bar No. 177155
MATTHEW R. REED, State Bar No. 196305
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants
ELIYAHOU HARARI and
SANDISK CORPORATION

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| STMICROELECTRONICS, INC., | CASE NO.: 1-07-CV-080123 |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| ELIYAHOU HARARI, *et al.*, | Date: March 11, 2008 |
| Defendants. | Time: 9:00 a.m. |
| | Dept.: 10 |
| | Judge: Honorable Neal Cabrinha |
| | No Trial Date Set |

3283198_3.DOC

# TABLE OF CONTENTS

Page

NOTICE OF MOTION & MOTION FOR JUDGMENT ON THE PLEADINGS ..........................1

MEMORANDUM OF POINTS & AUTHORITIES .................................................................2

I. INTRODUCTION...............................................................................................................2

II. FACTUAL BACKGROUND ............................................................................................3

    A. The Parties and the Relevant Agreements.................................................................3

    B. ST's Claims in This Case .........................................................................................4

    C. Procedural History.....................................................................................................5

III. ARGUMENT .....................................................................................................................6

    A. Legal Standard ..........................................................................................................6

    B. This Court Does Not Have Subject Matter Jurisdiction Over ST's Claims
       that Seek Assignment to ST of Rights in and to Co-Invented Patents....................6

        1. The Federal Courts Have Exclusive Jurisdiction to Resolve
           Substantial Questions of Federal Patent Law................................................6

        2. State Courts Do Not Have Jurisdiction to Determine the Nature of a
           Co-Inventor's Contribution to a Patent ........................................................7

        3. ST's Alleged Right to Relief Requires a Determination of Dr.
           Harari's Contribution to Each Invention Claimed in the Co-Invented
           Patents ............................................................................................................9

        4. This Court Conducts an Independent Evaluation of the Jurisdiction
           Question ........................................................................................................11

IV. CONCLUSION .................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AT&T Commc'ns, Inc. v. Superior Court*, 21 Cal. App. 4th 1673 (1994), *review denied* (Apr. 21, 1994), *cert. denied*, 513 U.S. 917 (1994) ............................................. 13

*Adams v. Pacific Bell Directory*, 111 Cal. App. 4th 93 (2003) ...................................................... 13

*Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*, 755 F.2d 1559 (Fed. Cir. 1985) ...................... 7

*Board of Regents v. Nippon Telephone and Telegraph Corp.*, 414 F.3d 1358 (Fed. Cir. 2005) ......................................................................................................... 7

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) ........................................ 6

*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) ...................................... 7, 8

*Gemstar-TV Guide Intern., Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352 (Fed. Cir. 2004) ........................................................................................................ 8, 11

*Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468 (2000) .............................................................. 6

*Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723 (1977) ........................................................ 12

*Holiday Matinee, Inc. v. Rambus, Inc.*, 118 Cal. App. 4th 1413 (2004) .............................. 6, 8, 11

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998) ......................... 8

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986) ........................... 7

*Israel Bio-Engineering Project v. Amgen Inc.*, 475 F.3d 1256 (Fed. Cir. 2007) ................. 7, 8, 12

*Jones v. Hardy*, 727 F.2d 1524 (Fed. Cir. 1984) ........................................................................... 7

*MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568 (Fed. Cir. 1989) ................................. 9, 11

*Machinists Automotive Trades Dist v. Peterbilt Motors Co.*, 220 Cal. App. 3d 1402 (1990) ..................................................................................................... 13

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) .......................... 8

*Pang v. Beverly Hospital, Inc.*, 79 Cal. App. 4th 986 (2000) ......................................................... 6

*People v. Dixon*, 153 Cal. App. 4th 985 (2007) ........................................................................... 13

*Provience v. Valley Clerks Trust Fund*, 163 Cal. App. 3d 249 (1984) ........................................ 13

*Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007) .................................................................... 7

*Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292 (Fed. Cir. 2002) .............................................. 8

*Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000) .......................... 12

3283198_3.DOC

DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.: 1-07-CV-080123

1  *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960 (9th Cir. 2004) ................ 12

2  *Wise v. Pacific Gas and Elec. Co.*, 132 Cal. App. 4th 725 (2005)................................................. 6

3  **STATUTES**

4  28 U.S.C. § 1338(a)........................................................................................................................ 6

5  28 U.S.C. § 1447(d) ...................................................................................................................... 12

6  35 U.S.C. § 112 .............................................................................................................................. 7

7  35 U.S.C. § 116 ................................................................................................................... 7, 8, 12

8  Cal. Code Civ. P. § 438(c)(1)(B)(i)............................................................................................. 1, 6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

3283198_3.DOC

DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.: 1-07-CV-080123

1     **NOTICE OF MOTION & MOTION FOR JUDGMENT ON THE PLEADINGS**

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE THAT on March 11, 2008 at 9:00 a.m., or as soon thereafter as

4 counsel can be heard, in Department 10 of this Court at Downtown Superior Court, 191 N. First

5 Street, San Jose, California 95113, before the Honorable Neal Cabrinha, Defendants SanDisk

6 Corporation and Dr. Eliyahou Harari will and hereby do move this Court for an order granting

7 judgment on the pleadings based on lack of subject matter jurisdiction with respect to the

8 question of ownership of jointly invented patents at issue in this action. This motion is brought

9 pursuant to California Code of Civil Procedure Section 438(c)(1)(B)(i) on the grounds that

10 Plaintiff's causes of action require the resolution of a substantial question of federal patent law

11 and therefore exclusive jurisdiction is vested in federal court over this inquiry.

12     Defendants' Motion is based on this Notice of Motion and Motion for Judgment on the

13 Pleadings, Defendants' Memorandum of Points and Authorities in Support thereof, the

14 accompanying Declaration of Anthony J Weibell and the exhibits attached thereto, the

15 accompanying Request for Judicial Notice, the pleadings and records on file herein, and such

16 further oral and documentary evidence as may be presented at the hearing on this matter.

17

18

19

20

21

22

23

24

25

26

27

28

3283198_3.DOC

1    **MEMORANDUM OF POINTS & AUTHORITIES**

2    **I.    INTRODUCTION**

3              This motion seeks judgment on the pleadings that the Court does not have jurisdiction

4    over Plaintiff STMicroelectronics, Inc.'s ("ST") causes of action that seek to resolve ownership

5    questions regarding patents that Defendant Dr. Eliyahou Harari ("Dr. Harari") co-invented with

6    other inventors.  That ownership inquiry requires the resolution of a substantial question of

7    federal patent law over which federal courts have *exclusive* jurisdiction.

8              Dr. Harari founded a company named WaferScale Integration ("WSI") in 1983.  On

9    February 28, 1988, he resigned his position as an employee and officer of WSI at the direction of

10   the company.  After his employment ended, Dr. Harari founded a new company called SanDisk

11   Corporation ("SanDisk"), where he works to this day.  Until March 1989, Dr. Harari remained a

12   consultant to WSI while he worked at SanDisk with other engineers.  Dr. Harari's work at

13   SanDisk was open, notorious and known by WSI.  In this lawsuit, brought nearly two decades

14   after the fact, ST (as WSI's alleged successor-in-interest) claims that inventions created by Dr.

15   Harari during his post-employment consultancy with WSI should have been assigned to that

16   company and not to his employer, SanDisk.  Defendants vigorously dispute that proposition.

17   The relevant assignment agreement provides that Dr. Harari's invention assignment obligations

18   terminated with his employment.

19             This motion, however, addresses a more fundamental question:  do California courts have

20   jurisdiction to resolve ownership disputes with respect to patents that list multiple inventors

21   where only one of the inventors is alleged to have owed assignment obligations to the plaintiff?

22   Given the force of federal patent law, the answer to that question is "no."  Nearly half of the

23   patents to which ST seeks an ownership interest list Dr. Harari as a co-inventor (*i.e.*, those

24   patents list other co-inventors along with Dr. Harari).  These co-invented patents contain

25   multiple claims that each represents a separate invention, and a person listed on a patent as a co-

26   inventor need not have contributed to every separate invention claimed within a patent

27   application.  Therefore, it would be impossible for this Court to determine which inventions were

28   made by Dr. Harari alone, which inventions were made by a co-inventor alone, and which were

1   made together by Dr. Harari and his co-inventors, without conducting an inventorship analysis of

2   the patents in the first instance. That analysis of the patents indisputably raises a substantial

3   question of federal patent law, which brings ST's causes of action within the exclusive

4   jurisdiction of the federal courts. Accordingly, this Court does not have jurisdiction to decide the

5   ownerships questions raised by the Complaint with respect to the co-invented patents.

6   ## II.   FACTUAL BACKGROUND

7   ### A.   The Parties and the Relevant Agreements

8   SanDisk, headquartered in Santa Clara County, markets and sells "flash memory"

9   products. Compl. ¶¶ 3, 42. Flash memory is a type of semiconductor memory used in a wide

10  variety of electronic systems and digital devices that can be reprogrammed and erased but does

11  not require power to retain the data that it stores. Compl. ¶ 16. SanDisk was founded by

12  Dr. Harari in 1988. Compl. ¶ 40.

13  ST is a Delaware corporation headquartered in Carrollton, Texas. Compl. ¶ 1. It is a

14  wholly owned subsidiary of STMicroelectronics N.V., a multinational firm with headquarters in

15  Geneva, Switzerland. *See* Declaration of Russell Johnson, Ex. 4 at ¶¶ 2-3 (filed Aug. 23, 2006).

16  On July 27, 2000, ST acquired a company called WaferScale Integration ("WSI"), Dr. Harari's

17  previous employer. Compl. ¶ 7.

18  Dr. Harari founded WSI in 1983. Compl. ¶ 6. On February 22, 1984, Dr. Harari signed

19  an "Employee Agreement Regarding Confidentiality & Inventions" ("1984 Inventions

20  Agreement") with WSI. Compl., Ex. A. Pursuant to that agreement, Dr. Harari agreed to

21  disclose to WSI any inventions "made or conceived by [him], either alone or with others, during

22  the term of [his] employment." *Id.* at ¶ 3. He further agreed to assign to WSI his rights to

23  inventions that "relate in any way to or are useful in [WSI's] business as presently conducted or

24  as conducted at any future time during [his] employment." *Id.*

25  On February 29, 1988, Dr. Harari and WSI entered into an Agreement ("1988

26  Agreement") under which Dr. Harari agreed, at the direction of WSI, to resign his position as an

27  employee of the company. Compl., Ex. C at ¶ 1.1. WSI acknowledged that Dr. Harari was not

28  terminated for cause. *Id.* at ¶ 1.2. Dr. Harari agreed to be available as requested by WSI to

-3-
3283198_3.DOC

1   provide consulting services for 32 hours per month for a period of 11 months following the

2   termination of his employment. *Id.* at ¶ 2.4. Dr. Harari also acknowledged and agreed "that he

3   shall continue to be bound by and comply with the terms" of the 1984 Inventions Agreement. *Id.*

4   at ¶ 3.3. By its plain terms, the 1988 Agreement did not contain any new assignment obligations

5   and did not alter the scope of his previous agreement to assign.

6       **B.   ST's Claims in This Case**

7       In late 2004, SanDisk filed patent infringement lawsuits against ST in federal district

8   court and in the United States International Trade Commission for infringing three SanDisk

9   patents. Compl. ¶¶ 46-48. In response, ST filed the present action. ST alleges that nearly two

10  decades ago Dr. Harari failed to assign to WSI his rights to inventions disclosed in six patent

11  applications ("Harari Applications") that were filed with the PTO between April 26, 1988 and

12  April 13, 1989 (months after his employment with WSI ended). Compl. ¶¶ 24-30. Based on this

13  allegation, ST's Complaint alleges the following claims against Dr. Harari: (1) breach of

14  fiduciary duty; (2) breach of the 1984 Inventions Agreement and the 1988 Agreement; (3) fraud;

15  (4) conversion; and (5) unjust enrichment. Compl. ¶¶ 55-96. Against SanDisk, ST asserts

16  claims for: (1) conversion; (2) inducing breach of contract; (3) unjust enrichment; and (4) unfair

17  competition. *Id.* at ¶¶ 88-102.

18      In its Complaint, ST asks that "all inventions and the patents relating thereto which were

19  *conceived of or resulted from inventive activity on the part of Harari,* that took place [during

20  Harari's employment with WSI], be assigned to plaintiff." Compl. at 18, Prayer for Relief

21  (emphasis added). ST also asks that the Court grant ownership of all patents which issued or

22  claim priority from the applications filed by Harari during and after his tenure at WSI, "which

23  should have properly been assigned to WSI," to plaintiff "as the sole owner if Harari is the sole

24  inventor or as a co-owner if Harari is a co-inventor." *Id.* ST does not dispute that persons other

25  than Dr. Harari are named as co-inventors on twenty-four of the patents which have issued from

26  the Harari Applications. *See* Weibell Decl., Ex. 1 at 8 ("ST does not dispute that persons other

27  than Harari are listed as inventors on several of the patents"); *see also id.*, ¶¶ 6-29 and Exs. 4

28  through 27 (copies of the 24 co-invented patents). For those jointly-invented patent applications,

1    ST does not seek assignment of the entire patent applications and the resulting patents, but

2    rather, ST seeks assignment of only Dr. Harari's interest in those patent applications. *See*

3    Weibell Decl., Ex. 3 at 21:6-9 (Counsel for ST: "SanDisk keeps the co-inventors' interest. We're

4    not interested in getting it. We're only interested in getting . . . Dr. Harari's interest.").

5    **C.    Procedural History**

6    ST filed this action in Alameda County Superior Court on October 14, 2005. SanDisk

7    and Dr. Harari then removed the case to federal court, and ST filed a motion to remand. On

8    March 20, 2006, the federal district judge denied ST's motion to remand the case to Superior

9    Court. Weibell Decl., Ex. 1. The federal court ruled that ST's Complaint raised a substantial

10   question of federal patent law over which that court had exclusive jurisdiction:

11       ST cannot at this time establish what patented inventions or parts thereof Harari
         "conceived" during his employment with WSI, nor can ST establish what
12       inventions "relate to" WSI's business, unless Harari's inventive contribution to
         each patent first is identified. The question of whether the interest in a particular
13       patent should have been assigned to WSI arises only after Harari's inventive
         contribution to each patent has been identified. Accordingly, because
14       determination of inventorship is critical to determination of ownership,
         Defendants have shown that ST's right to relief "necessarily depends on
15       resolution of a substantial question of federal patent law, in that patent law is a
         necessary element of one of the well-pleaded claims."

16

17   *Id.* at 10 (citation and quotation omitted).

18   On July 18, 2006, the district court reconsidered its previous ruling, reached the opposite

19   conclusion, and granted ST's motion to remand the action to Alameda County Superior Court.

20   Weibell Decl., Ex. 2 at 6.

21   Defendants then filed a motion to transfer venue to Santa Clara County Superior Court,

22   and SanDisk filed an anti-SLAPP motion to strike ST's unfair competition cause of action. The

23   Alameda County Superior Court denied both motions. Defendants filed a writ with respect to the

24   venue transfer order and SanDisk filed an appeal regarding the anti-SLAPP motion. The Court

25   of Appeal directed the Alameda County Superior Court to transfer this action to Santa Clara

26   County Superior Court and affirmed the denial of SanDisk's anti-SLAPP motion.

27

28

3283198_3.DOC

## III.   ARGUMENT

ST's claim to any ownership interest in co-invented patent applications depends *entirely* upon Dr. Harari's inventive contribution to those applications being assignable under a contract between Dr. Harari and WSI. If Dr. Harari's contribution to a co-invented patent application was not assignable (*e.g.*, was not related to WSI's business or conceived during his employment with WSI), ST could not possibly claim an ownership interest in that application. The inventive contribution of each inventor must therefore be identified before an ownership analysis can take place. That inquiry raises a substantial question of federal patent law: inventorship. Accordingly, federal courts have *exclusive* jurisdiction to resolve the parties' dispute.

### A.   Legal Standard

"A motion for judgment on the pleadings is akin to a general demurrer; it tests the sufficiency of the complaint to state a cause of action." *Wise v. Pacific Gas and Elec. Co.*, 132 Cal. App. 4th 725, 738 (2005) (citing *Pang v. Beverly Hospital, Inc.*, 79 Cal. App. 4th 986, 989 (2000)). In deciding a motion for judgment on the pleadings, a court "assume[s] the truth of all factual allegations in the complaint, along with matters subject to judicial notice." *Id.* (citing *Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468, 515-516 (2000)). A motion for judgment on the pleadings is proper where "[t]he court has no jurisdiction of the subject of the cause of action alleged in the complaint." Cal. Code Civ. P. § 438(c)(1)(B)(i).

### B.   This Court Does Not Have Subject Matter Jurisdiction Over ST's Claims that Seek Assignment to ST of Rights in and to Co-Invented Patents

#### 1.   The Federal Courts Have Exclusive Jurisdiction to Resolve Substantial Questions of Federal Patent Law

State courts lack subject matter jurisdiction over state law claims where the "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Holiday Matinee, Inc. v. Rambus, Inc.*, 118 Cal. App. 4th 1413, 1427-28 (2004) (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809 (1988)). *See also* 28 U.S.C. § 1338(a) (federal district courts "shall have original jurisdiction of any civil action arising under any Act of Congress

-6-

1   relating to patents, . . . [s]uch jurisdiction shall be exclusive of the courts of the states"). To

2   determine whether a complaint presents substantial issues of patent law sufficient to deprive the

3   state court of subject matter jurisdiction, "a court must review and analyze the plaintiff's

4   pleadings with *special attention directed to the relief requested* by the plaintiff." *Board of*

5   *Regents v. Nippon Telephone and Telegraph Corp.*, 414 F.3d 1358, 1362 (Fed. Cir. 2005)

6   (emphasis added) (citing *Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*, 755 F.2d 1559, 1562

7   (Fed. Cir. 1985)).

8          **2.   State Courts Do Not Have Jurisdiction to Determine the Nature of a
              Co-Inventor's Contribution to a Patent**

9

10          Determining a co-inventor's contribution to the inventions claimed in a patent presents a

11   substantial question of federal patent law within the exclusive jurisdiction of the federal courts.

12          In a patent application, an inventor (or co-inventors) must set forth "one or more claims

13   particularly pointing out and distinctly claiming the subject matter which the applicant regards as

14   his invention." 35 U.S.C. § 112. Each individual claim set forth in a patent application

15   represents a separate and distinct invention from any other claim within the same patent. *Israel*

16   *Bio-Engineering Project v. Amgen Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) ("*IBEP*") ("each

17   claim must be considered as defining a separate invention") (quoting *Jones v. Hardy*, 727 F.2d

18   1524, 1528 (Fed. Cir. 1984)). Thus a patent that contains more than one claim necessarily

19   contains more than one invention.

20          Each invention described in a claim of a patent application "may be the work of two or

21   more joint inventors." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir.

22   1998) (citing 35 U.S.C. § 116). To be listed as one of the inventors on a patent application, a co-

23   inventor must have contributed to the conception[1] of at least one of the inventions claimed in a

24   patent application, but need not have contributed to the conception of every invention claimed in

25

26          [1] Under federal patent law, "'[c]onception is the formation in the mind of the inventor, of a
       definite and permanent idea of the complete and operative invention, as it is hereafter to be
27   applied in practice.'" *Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007) (quoting
       *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)).

28

                                    3283198_3.DOC

1   the patent. 35 U.S.C. § 116 ("Inventors may apply for a patent jointly even though . . . each did

2   not make a contribution to the subject matter of every claim of the patent"); *IBEP*, 475 F.3d at

3   1263-64 ("a co-inventor of even a single claim can then assert a right of joint ownership over an

4   entire patent with multiple claims"); *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302

5   (Fed. Cir. 2002). Accordingly, while all co-inventors listed on a patent application are

6   considered joint owners of the entire patent, a person's status as a listed co-inventor does not

7   mean that the inventor contributed to each and every invention claimed therein. *See IBEP*, 475

8   F.3d at 1263 ("when . . . multiple inventors are listed on the face of the patent, each co-owner

9   'presumptively owns a pro rata undivided interest in the entire patent, *no matter what their*

10  *respective contributions*'") (emphasis added) (quoting *Ethicon*, 135 F.3d at 1460).

11        Therefore, to determine which claimed inventions within a patent were conceived by a

12  particular inventor, the court must analyze that co-inventor's contributions "on a claim-by-claim

13  basis." *Gemstar-TV Guide Intern., Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir.

14  2004) ("Because co-inventors need not contribute to the subject matter of every claim of the

15  patent, inventorship is determined on a claim-by-claim basis."); *Trovan*, 299 F.3d at 1302

16  (same). The inventorship analysis "begins as a first step with a construction of each asserted

17  claim [in the patent application] to determine the subject matter encompassed thereby." *Id.*

18  "The second step is then to compare the alleged contributions of each asserted co-inventor with

19  the subject matter of the properly construed claim . . . ." *Id.*

20        Where a complaint requests relief that requires the court to perform the inventorship

21  analysis described above, the complaint lies within the exclusive jurisdiction of the federal

22  courts. *See Holiday Matinee*, 118 Cal. App. 4th at 1424 (recognizing the law of the Federal

23  Circuit that "inventorship issues" fall under federal jurisdiction) (citing *Hunter Douglas, Inc. v.*

24  *Harmonic Design, Inc.*, 153 F.3d 1318, 1330-31 (Fed. Cir. 1998), *overruled in part on other*

25  *grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999)).

26  Consequently, federal courts have exclusive jurisdiction where the relief requested requires a

27  plaintiff to establish that it is the rightful co-owner of a patent and where "co-ownership arises

28

1 from and depends solely on the patent law issue of inventorship." *MCV, Inc. v. King-Seeley*

2 *Thermos Co.*, 870 F.2d 1568, 1570-71 (Fed. Cir. 1989).

3      **3.    ST's Alleged Right to Relief Requires a Determination of Dr. Harari's**
                  **Contribution to Each Invention Claimed in the Co-Invented Patents**

4

5       ST's Complaint describes a single, three-part theory in support of its ownership claims

6 over the co-invented patent applications:

7         (1)    ST is allegedly the current successor to all of the property interests

8                 of WSI, Compl. ¶¶ 5-8;

9         (2)    Dr. Harari allegedly had an obligation under his contracts with

10                 WSI to assign to WSI any inventions "made or conceived by

11                 [him], either alone or with others, during the term of [his]

12                 employment" that "relate in any way to or are useful in [WSI's]

13                 business as presently conducted or as conducted at any future time

14                 during [his] employment," *id.* ¶¶ 11-12; and

15         (3)    the Harari Applications allegedly contained inventions that were

16                 made or conceived by Dr. Harari during the term of his

17                 employment with WSI that related to WSI's business but that were

18                 not assigned to WSI, *id.* ¶¶ 19-30.

19       Under the plain terms of that ownership theory, the Court must examine which inventions

20 were made by Dr. Harari and when they were made, and then decide whether those inventions

21 fall within the scope of his assignment agreement with WSI. Conducting this task falls within

22 the exclusive jurisdiction of the federal courts because it requires the Court to identify Dr.

23 Harari's inventive contribution to the relevant patent applications as contrasted with his co-

24 inventors, who owed no assignment obligations to WSI whatsoever. That inventorship analysis

25 raises a substantial question of federal law which must be resolved in federal court.

26       Under ST's theory, Dr. Harari's interest in a particular patent application should have

27 been assigned to WSI *only if* Dr. Harari conceived of at least one invention claimed within that

28 application during his employment with WSI, *and only if* that particular invention related to

-9-

1   WSI's business.  If, on the other hand, Dr. Harari only contributed to inventions that were either

2   (a) not made during the term of his employment with WSI or (b) not related to WSI's business,

3   he would not have owed assignment obligations to WSI.  Independent inventions described in a

4   separate claim of a patent application to which Dr. Harari made no contribution are not

5   inventions "made or conceived by [Dr. Harari], either alone or with others" under the invention

6   assignment agreement between Dr. Harari and WSI.  *See* Compl., Ex. A, ¶ 3.

7       The following hypothetical and corresponding chart illustrate this point:  Assume Dr.

8   Harari is listed as a co-inventor on a patent application with Inventor X ("X") and Inventor Y

9   ("Y").  The patent application contains 3 claims, each describing a separate invention.  The

10  invention in Claim 1 was made by Harari, X, and Y during the term of Harari's employment with

11  WSI but does not relate to WSI's business.  The invention in Claim 2 was made by Harari and Y

12  after Harari's employment with WSI ended and does relate to WSI's business.  The invention in

13  Claim 3 was made by X and Y at the same time Harari was employed by WSI and was also

14  related to WSI's business.  Harari made no contribution to the invention in Claim 3 and had no

15  connection to its conception.  Under this hypothetical, and according to the theory set forth in

16  ST's complaint, Harari had no duty to assign to WSI his interest in any of the inventions

17  described in the hypothetical patent application, despite the fact that he is listed as a co-inventor

18  on the face of the application and despite the fact that the invention in Claim 3 was invented

19  during his employment with WSI and related to WSI's business:

| HYPOTHETICAL PATENT APPLICATION Co-Inventors Named on Face of Application: Harari, X, and Y | | | | |
|---|---|---|---|---|
| Claim / Invention | Actual Inventors | Invented while Harari employed with WSI? | Related to WSI's Business? | Did Harari have duty to assign to WSI? |
| 1 | **Harari**, X, Y | Yes | No | No |
| 2 | **Harari**, Y | No | Yes | No |
| 3 | X, Y | Yes | Yes | No |

3283198_3.DOC

1    Because the patent applications only name the co-inventors on the face of the application

2    and do not identify which co-inventors contributed to which claims within the applications, the

3    Court must engage in an inventorship analysis to identify the particular claims within the patent

4    applications that contain inventions "made or conceived by [Dr. Harari], either alone or with

5    others, during the term of [his] employment." *Gemstar-TV Guide Intern, Inc. v. Int'l Trade*

6    *Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) ("Because co-inventors need not contribute to

7    the subject matter of every claim of the patent, inventorship is determined on a claim-by-claim

8    basis."). This hypothetical is thus dispositive of the federal question inquiry because it reveals a

9    circumstance in which a proper ownership determination could not be made without first

10   conducting a threshold inventorship analysis, and federal courts have exclusive jurisdiction over

11   causes of action that require an inventorship analysis, *Holiday Matinee*, 118 Cal. App. 4th at

12   1424; *MCV*, 870 F.2d at 1570-71.

13       Therefore, this Court does not have jurisdiction over ST's causes of action that seek to

14   resolve questions of ownership regarding the co-invented patent applications.

15       **4.    This Court Conducts an Independent Evaluation of the Jurisdiction
            Question**

16

17       In opposition, ST will likely argue that this Court should give deference to the federal

18   district court's Order remanding this action to Superior Court. That argument in not well taken

19   for two reasons. First, the federal district court made an error of law in its reconsideration Order.

20   Second, the non-appealable Order remanding the case to this Court is not binding and does not

21   constitute law of the case. Instead, this Court conducts an independent evaluation of the

22   jurisdictional issue.

23       The federal district court, in reconsidering its previous order denying ST's motion to

24   remand, ruled as follows:

25       As a matter of law, then, the fact that Harari is named as a sole inventor or co-
         inventor on the patents at issue *establishes that he contributed to the conception of*
26       *the inventions described therein* and that he thereafter acquired a pro rata undivided
         interest in each patent for which he is named an inventor. Because he was required
27       to disclose to WSI all inventions that *he conceived alone or with others* during his
         term of employment, and to assign his entire right in such inventions if they related

28

-11-                                   3283198_3.DOC

1   to WSI's business, there is no need to inquire into Harari's precise inventive
2   contribution.

3   Weibell Decl., Ex. 2 at 5 (emphasis added).  The district court was thus under the mistaken belief

4   that because Dr. Harari was listed as a co-inventor, he contributed to all of the inventions

5   described in the patent, thus obviating the need to determine which contributions Dr. Harari

6   made to the co-invented patent applications.

7       The district court's conclusion that Dr. Harari contributed to and conceived of *each* of the

8   inventions described in the patents merely because he was listed as a co-inventor is clearly

9   wrong under black letter federal patent law.  35 U.S.C. § 116 ("Inventors may apply for a patent

10  jointly even though . . . each did not make a contribution to the subject matter of every claim of

11  the patent").[2]  Instead, the district court should have held that Dr. Harari's contribution was

12  unknowable simply by looking at the patents.  Had it considered that unassailable proposition,

13  the district court would have reached the proper conclusion:  Dr. Harari's inventive contribution

14  to the patents must be isolated and compared with the invention assignment agreement before an

15  ownership analysis can take place, and that inventorship analysis raises a substantial question of

16  federal law.

17      Moreover, this Court is not obligated to follow the district court's erroneous conclusion

18  regarding jurisdiction.  Indeed, Defendants were not accorded an opportunity to appeal the order

19  to the federal appellate court for review.  *See* 28 U.S.C. § 1447(d) ("An order remanding a case

20  to the State court from which it was removed is not reviewable on appeal or otherwise . . . .").[3]

21  Instead, a defendant's *sole* remedy to challenge such an order is to file a motion in state court

22

23      [2] *IBEP*, 475 F.3d at 1263-64 ("a co-inventor of even a single claim can then assert a right of
    joint ownership over an entire patent with multiple claims"); *IBEP*, 475 F.3d at 1263 ("each
24  claim must be considered as defining a separate invention"); *Union Oil Co. of Cal. v. Atlantic
    Richfield Co.*, 208 F.3d 989, 1003 (Fed. Cir. 2000) ("It is well-established that each claim in a
25  patent constitutes a separate invention.") (Lourie, J., in dissent).

26      [3] *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 723-24 (1977) (per curiam) ("The
    District Court's remand order was plainly within the bounds of [28 U.S.C. § 1447(c)] and hence
27  was unreviewable by the Court of Appeals, by mandamus or otherwise."); *United Investors Life
    Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) (section 1447(d) precludes
28  review of a district court's jurisdictional decision even if it was clearly wrong).

-12-                                                    3283198_3.DOC

1  seeking a *de novo* examination of the subject matter jurisdiction question. *See AT&T Commc'ns,*

2  *Inc. v. Superior Court,* 21 Cal. App. 4th 1673, 1680-81 (1994) (after remand from federal district

3  court, state court reached opposite conclusion from district court and held that state courts lacked

4  subject matter jurisdiction over plaintiff's state law claims on federal preemption grounds),

5  *review denied* (Apr. 21, 1994), *cert. denied,* 513 U.S. 917 (1994); *Provience v. Valley Clerks*

6  *Trust Fund,* 163 Cal. App. 3d 249, 256-262 (1984) (same); *see also Machinists Automotive*

7  *Trades Dist v. Peterbilt Motors Co.,* 220 Cal. App. 3d 1402 (1990) (finding federal preemption

8  of state law claims after remand from federal court).

9       In short, the remand order is not binding in state court and is not law of the case. *See*

10  *AT&T,* 21 Cal. App. 4th at 1680-81 (after remand, California courts were not bound to follow

11  federal district court's ruling in deciding question of federal subject matter jurisdiction);

12  *Provience,* 163 Cal. App. 3d at 256-262 (same); *see also People v. Dixon,* 153 Cal. App. 4th 985,

13  1000 (2007) (California courts are not bound by decisions of federal district or appellate courts);

14  *Adams v. Pacific Bell Directory,* 111 Cal. App. 4th 93, 97 (2003) (state courts are not required to

15  adhere to decisions of federal courts even on federal questions). Therefore, it should not be

16  followed.

17  **IV.    CONCLUSION**

18       For the foregoing reasons, Defendants respectfully request that their Motion for Judgment

19  on the Pleadings be GRANTED.

21  Dated: February 7, 2008

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____
    Michael A. Ladra

Attorneys for Defendants
ELIYAHOU HARARI and
SANDISK CORPORATION

3283198_3.DOC

# Exhibit E

**(ENDORSED)**

**F I L E D**

MAR 1 1 2008

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____
DAVID K. WALKER —— DEPUTY

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

|  |  |
|---|---|
| STMICROELECTRONICS, INC., | |
|      Plaintiff, | |
| v. | Case No. 1-07-CV-080123 |
| ELIYAHOU HARARI, *et al.*, | ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
|      Defendants. | |

The motion of defendants Eliyahou Harari and SanDisk Corporation for judgment on the pleadings came on for hearing before the Honorable Neal A. Cabrinha on March 11, 2008, at 9:00 A.M. in Department 10. The matter having been submitted, the Court now rules as follows:

The requests by defendants and plaintiff for judicial notice are granted.

Defendants have failed to show from the face of the Complaint, or matters judicially noticeable, that any of plaintiff's causes of action are created by federal patent law or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. (*Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800, 809.)

1    The Complaint in this case concerns a question of patent ownership, a
2  question exclusively for state courts. (*Jim Arnold Corp. v. Hydrotech Sys., Inc.*
3  109 F.3d 1567, 1572 (Fed. Cir. 1997).)

4    Accordingly, defendants' motion for judgment on the pleadings is denied.

5    March ___, 2008

6                                               NEAL A. CABRINHA

7                                          _____
                                             JUDGE OF THE SUPERIOR COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit F



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | GENEVA | SAN FRANCISCO |
| 555 CALIFORNIA STREET | BRUSSELS | HONG KONG | SHANGHAI |
| SAN FRANCISCO, CA 94104 | CHICAGO | LONDON | SINGAPORE |
| (415) 772 1200 | DALLAS | LOS ANGELES | TOKYO |
| (415) 772 7400 FAX | FRANKFURT | NEW YORK | WASHINGTON, DC |

rljohnson@sidley.com
(415) 772-7422          FOUNDED 1866

May 7, 2008

**Via Email & U.S. Mail**

Michael A. Ladra, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

Re:   ***STMicroelectronics, Inc. v. Harari and SanDisk***
        ***Santa Clara County Superior Court – Case No.: 1-07-CV-080123***

Dear Mike:

We received the notice of removal that defendants filed yesterday. There is no basis for the removal. Defendants must show that ST's "well-pleaded complaint establishes . . . that [ST's] right to relief necessarily depends on resolution of a substantial question of federal patent law." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988) (emphasis added). Your removal papers do not even address that test. The existence in a case of a substantial question of federal law, which is all that you assert in your papers, is not enough. The well pleaded complaint must establish that the plaintiff's right to recover necessarily depends on federal law. Certainly, the holding in *DDB Technologies L. L. P. v. MLB Advanced Media, L. P.*, 517 F.3d 1284, (Fed. Cir. 2008) on which defendants rely does not support removal of this case under the *Christianson* test.

To the contrary, as has already been decided by both Judge Fogel in federal court and Judge Cabrina in state court, the causes of action alleged in ST's complaint are matters of state law. That complaint has not been amended or changed.

On Friday, ST is also going to ask Judge Fogel to immediately order this case transferred to his court as a related case. ST is also going to request leave to file a motion to remand on shortened time and for the motion be decided on the papers, without a hearing. ST is going to propose that defendants opposition be filed and hand served on ST on Wednesday, May 14, 2008 and that ST's reply be served and filed on Friday, May 16, 2008. Please let me know if defendants will stipulate to the related case order and the order shortening time.

In the event the court does not grant the order shortening time, the motion will be noticed for July 25, 2008, which is the first available date on Judge Fogel's calendar. Please let me know if someone working on this case is available on that date.



Michael A. Ladra
May 7, 2008
Page 2

     Defendants entire course of conduct in this litigation has been one of delay. Defendants have for a second time improperly removed this case – after both Judge Fogel and Judge Cabrinha ruled this case involves state law – not federal law. Defendants objected to going forward with the CMC on Thursday. As a result of this improper removal, the CMC has now been derailed. Also, defendants delayed the deposition of Mr. Federman for months and the removal has disrupted the taking of that deposition.

     ST intends to ask for an award of attorneys fees as sanctions for the improper removal unless you immediately withdraw the notice of removal. In addition, after remand we are going to file a motion designed to remedy, to the extent possible, the unnecessary delays that have occurred, and to prevent further delays in the future.

                  Very truly yours,

                  Russell L. Johnson

# Exhibit G



Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304-1050

PHONE 650.493.9300
FAX 650.493.6811

www.wsgr.com

MICHAEL A. LADRA
Internet: mladra@wsgr.com
Direct Dial: (650) 320-4869

May 8, 2008

_**Via Electronic and U.S. Mail**_

Russell L. Johnson, Esq.
Sidley Austin Brown & Wood LLP
555 California Street
San Francisco, CA 94104

> Re: _**STMicroelectronics, Inc. v. Eliyahou Harari and SanDisk Corporation**_
> _**N.D. Cal. Case No. 08-CV-02332 MMC**_

Dear Russ:

I write in response to your letter to me yesterday regarding Defendants' removal of the above-referenced case. Whether deliberately or not, it appears that you misapprehend the basis for Defendants' removal. By taking the position that Dr. Harari's Employment Agreement Regarding Confidentiality & Inventions effected an automatic assignment to WSI, ST for the first time raised a substantial question of federal law, justifying removal pursuant to 28 U.S.C. § 1446(b) ("a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or _other paper_ from which it may first be ascertained that the case is one which is or has become removable") (emphasis added).

Contrary to your accusations, Defendants did not remove the case for purposes of delay, but rather to ensure the proper federal forum for the parties' dispute. Your specific statement that Defendants objected to going forward with the case management conference in state court is unfounded; Defendants filed a case management conference statement and informed the state court that counsel intended to appear at the case management conference, despite the removal. It was the state court that vacated the case management conference (and all other dates) upon filing of the notice of removal. In addition, your further statement that "defendants delayed the deposition of Mr. Federman for months" is demonstrably false; Mr. Federman's deposition was continued from the original date at Plaintiff's request and in light of Mr. Federman's availability.

Moreover, Mr. Federman's very limited availability suggests that we proceed with his deposition next Friday, May 16, 2008. WSGR is authorized to accept service of a deposition subpoena on Mr. Federman's behalf, noticing his deposition for next Friday in the now-removed federal case. As you are aware, Mr. Federman already produced documents responsive to Plaintiff's state court subpoena, and presumably you have been preparing for his deposition.

3314033v1

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

Russell L. Johnson, Esq.
May 8, 2008
Page 2

Please advise me at your earliest convenience whether you plan to proceed with Mr. Federman's deposition next Friday.

With respect to asking Judge Fogel to order this case transferred to his court as a related case, we are in apparent agreement. In fact, I plan to file either today or tomorrow an Administrative Motion to Consider Whether Cases Should Be Related. I presume the answer to this question is yes, but please let me know at your earliest convenience whether ST will stipulate that the cases should be related pursuant to Civil Local Rules 3-12 and 7-11.

Next, I do not agree that it would be appropriate for the court to decide without a hearing any motion to remand filed by Plaintiff. I also do not agree that it would be appropriate for the parties to brief any such motion on shortened time. Rather, I believe it would make the most sense for Judge Fogel to hear argument on any motion to remand at the end of July (and perhaps he would be amenable to hearing argument on the same date as the currently pending motion for summary judgment in the related cases, July 18). I am available on both July 25 and July 18.

Finally, although your letter is not clear on this point, I understand that you may file tomorrow a Motion for Administrative Relief pursuant to Civil Local Rule 7-11. If you intend to file any other motion tomorrow, please let me know, as I am unavailable both tomorrow and next Monday.

Very truly yours,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Michael A. Ladra

MAL:pat

3314033-1

1  RUSSELL L. JOHNSON (SBN 53833)
   rljohnson@sidley.com
2  EDWARD V. ANDERSON (SBN 83148)
   evanderson@sidley.com
3  TEAGUE I. DONAHEY (SBN 197531)
   tdonahey@sidley.com

4
   SIDLEY AUSTIN LLP
5  555 California Street, Suite 2000
   San Francisco, California 94104-1715
6  Telephone:    415-772-1200
   Facsimile:    415-772-7400
7
8  Attorneys for Plaintiff
   STMicroelectronics, Inc.

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13  STMICROELECTRONICS, INC.,            )  Case No. 05-04691 JF
     a Corporation,                      )
14                                       )  Related Case No. 08-02332 MMC
                                         )
15              Plaintiff,               )  **[PROPOSED] ORDER GRANTING**
                                         )  **PLAINTIFF STMICROELECTRONICS,**
16        vs.                            )  **INC.'S MOTION TO SHORTEN**
                                         )  **BRIEFING SCHEDULE FOR MOTION**
17  ELIYAHOU HARARI, an individual;      )  **TO REMAND**
    SANDISK CORPORATION, a corporation; and )
18  DOES 1 TO 20, inclusive              )
                                         )  **Date:        N/A**
19              Defendants.              )
                                         )  **Time:        N/A**
20                                       )
                                         )  **Ctrm:        3 (Hon. Jeremy Fogel)**
21  _____  )

22

23

24

25

26

27

28

1       Plaintiff STMicroelectronics, Inc. ("ST") moved pursuant to Civil L.R. 6-3 to shorten the

2 time for briefing on ST's Second Motion to Remand.

3       After consideration of the papers submitted and all other matters presented to the Court, it is

4 hereby **ORDERED** that ST's motion is **GRANTED**, and that:

5       1.     Defendants Eliyahou Harari and SanDisk Corporation (collectively, "Defendants")

6 shall file any opposition to ST's Second Motion to Remand by Friday, May 15, 2008;

7       2.     Plaintiff ST shall file any reply to Defendants' opposition by Tuesday, May 19, 2008;

8 and

9       3.     ST's Second Motion to Remand shall be decided on the submitted papers without oral

10 argument.

11

12

13 Dated: _____, 2008      _____

14               UNITED STATES DISTRICT JUDGE