MICHAEL A. LADRA, State Bar No. 064307 (mladra@wsgr.com)
TERRY JOHNSON, State Bar No. 121569 (tjohnson@wsgr.com)
JAMES C. YOON, State Bar No. 177155 (jyoon@wsgr.com)
MATTHEW R. REED, State Bar No. 196305 (mreed@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants
Eliyahou Harari and SanDisk Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC., | CASE NO.: 08-02332 MMC |
| Plaintiff, | **DECLARATION OF MICHAEL A. LADRA IN SUPPORT OF DEFENDANTS ELIYAHOU HARARI AND SANDISK CORPORATION'S OPPOSITION TO PLAINTIFF STMICROELECTRONICS, INC.'S MOTION TO SHORTEN BRIEFING SCHEDULE FOR MOTION FOR REMAND** |
| v. | |
| ELIYAHOU HARARI, an individual; SANDISK CORPORATION, a corporation; and DOES 1-20, inclusive, | |
| Defendants. | |
| | Date: N/A |
| | Time: N/A |
| | Location: Courtroom 7, 19th Floor |

1.    I am a member of the firm Wilson Sonsini Goodrich & Rosati, Professional Corporation and am one of the attorneys of record for Defendants Eliyahou Harari and SanDisk Corporation in this case. I have personal knowledge of the facts stated herein, and would and could testify thereto if called as a witness.

2.    On October 14, 2005, ST filed a complaint in Alameda County Superior Court alleging breach of contractual and fiduciary obligations by Dr. Harari and SanDisk seeking the assignment of certain SanDisk patent applications based on a 1984 Inventions Agreement between Dr. Harari and ST's alleged predecessor in interest, WaferScale Integration, Inc.

3.    On November 16, 2005, Defendants filed a notice of removal of the case to federal court.

4.    On December 13, 2005, ST filed a motion for remand.

5.    On March 20, 2006, this Court denied ST's motion for remand.

6.    On April 14, 2006, ST filed a motion for reconsideration of this Court's denial of ST's motion for remand.

7.    On April 24, 2006, Defendants filed a motion for summary judgment on the grounds that ST's claims were barred by the statute of limitations as ST had constructive and actual notice of their claims well prior to the statutory period.

8.    On July 18, 2006, after briefing on the motion for summary judgment was completed, and following oral argument on this motion, the Court granted ST's motion for reconsideration.

9.    Upon remand, SanDisk filed a motion for judgment on the pleadings. The Superior Court denied Defendants' motion.

10.    On August 11, 2006, Defendants filed a motion to transfer venue to Santa Clara County Superior Court. On September 12, 2006, the Alameda County Superior Court denied Defendants' motion to transfer venue.

11.    On February 15, 2007, the Court of Appeal for the First Appellate District reversed the Alameda Superior Court's order denying Defendants' motion to transfer venue. Subsequently, the action was transferred to the Santa Clara County Superior Court.

12.     On August 14, 2006, Defendants filed an anti-SLAPP motion to strike ST's unfair competition cause of action.  On September 11, 2006, the Alameda Superior Court denied Defendants' Anti-SLAPP motion to strike ST's unfair competition cause of action.

13.     On August 7, 2007, the Court of Appeal for the First Appellate District affirmed the Alameda County Superior Court's order denying Defendants' anti-SLAPP motion to strike ST's unfair competition cause of action.

14.     Between February 15 and December 13, 2007, the action was stayed by operation of law pending Defendants' appeal.  Defendants filed a motion to stay discovery pending appeal because ST refused to recognize the automatic stay mandated by Cal. Civ. Proc. Code § 916.  The Superior Court granted Defendants' motion to stay confirming that the action would be stayed pending appeal by operation of law.

15.     While in Santa Clara County Superior Court, Defendants moved to have their motion for summary judgment based on statute of limitations grounds heard on an early briefing schedule.  The motion was originally scheduled to be heard April 10, 2008.  That date was moved to July 10, 2008 by stipulation of the parties.

16.     As of today, Defendants have produced over 1.2 million pages to ST.  ST has produced approximately 7,273 pages.

17.     On March 26, 2008, Defendants filed a motion to compel the production of documents and further responses to interrogatories by ST.  In response, ST filed a motion to compel further discovery responses by SanDisk.

18.     On April 17, 2008, the Santa Clara County Superior Court held a hearing regarding the pending motions to compel.  Prior to the hearing, the Superior Court issued a tentative ruling granting Defendants' motion to compel in all material respects.  The Court did not issue a final decision prior to removal of the case to federal court.

19.     On May 8, 2008, in a letter to ST, Defendants offered to proceed with the deposition of Irwin Federman on May 16, 2008.  On May 12, 2008, ST cancelled the deposition of Mr. Federman.  Attached as Exhibit A is a true and correct copy of an email chain between

1    Russell L. Johnson (counsel for ST) and Matthew R. Reed (counsel for Defendants), dated May

2    12, 2008, regarding Mr. Federman's deposition.

3        20.    Attached as Exhibit B is a true and correct copy of excerpts of Plaintiff's First

4    Supplemental Responses to Defendant SanDisk Corporation's First Set of Form Interrogatories –

5    Limited Civil Cases (Economic Litigation), dated April 7, 2008.

6        21.    Attached as Exhibit C is a true and correct copy of ST's Reply in Support of ST's

7    Motion to Compel Discovery to SanDisk Corporation, filed in Santa Clara County Superior

8    Court on April 11, 2008.

9

10        I declare under penalty of perjury under the laws of the United States that the foregoing is

11    true and correct.  Executed on this the 14th day of May 2008, at Palo Alto, California.

12

13                                 /s/ Michael A. Ladra
                                 Michael A. Ladra
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## Reed, Matt

**From:**    Reed, Matt
**Sent:**    Monday, May 12, 2008 8:46 PM
**To:**    Johnson, Russell L.
**Cc:**    Ladra, Michael; Lonergan, Patrick
**Subject:**    RE: ST v. SanDisk and Harari: Deposition of Irwin Federman

Russ -

Thanks for your response. While we don't agree with your analysis, and any necessary motions could obviously be brought in whatever court had jurisdiction at the time, we will contact Mr. Federman and cancel the deposition as you have requested.

Matt

---

**From:** Johnson, Russell L. [mailto:rljohnson@sidley.com]
**Sent:** Monday, May 12, 2008 6:02 PM
**To:** Reed, Matt
**Cc:** Ladra, Michael; Lonergan, Patrick
**Subject:** RE: ST v. SanDisk and Harari: Deposition of Irwin Federman

Matt:

Mike's letter did suggest that we serve a notice of deposition for Federman in the federal case. However, as has already been held by Judge Fogel and Judge Cabrinha federal court does not have jurisdiction in this case. Defendants did not have a legitimate basis for removing this case, and we are seeking to get this case remanded on an expedited basis.

Taking a deposition in a court that does not have jurisdiction has the potential for creating problems. In particular, any motions to compel or other rulings that may be needed if problems occur in the deposition need to be made by a court with jurisdiction over the case. Also, if the case is remanded on an expedited schedule as we have requested, it is unlikely we could get any needed motions heard before remand. Our intention is to proceed with the deposition once the case gets back to state court where this it belongs.

Russ

---

**From:** Reed, Matt [mailto:MReed@wsgr.com]
**Sent:** Monday, May 12, 2008 5:48 PM
**To:** Johnson, Russell L.; Lonergan, Patrick
**Cc:** Ladra, Michael
**Subject:** ST v. SanDisk and Harari: Deposition of Irwin Federman

Russ and Patrick -

I'm following up on a message I left a short while ago for Russ asking whether ST intends to take the deposition of Irwin Federman this Friday. In Mike Ladra's letter of last week, we offered to hold the deposition on the currently scheduled date of May 16. For Mr. Federman's convenience, we ask that you confirm at your earliest convenience whether the deposition will proceed on that date.

Regards,
Matt

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

Sidley Austin LLP mail server made the following annotations on 05/12/08, 19:57:42:
------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such

taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*********************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*********************************************************************************************

# EXHIBIT B

Russell L. Johnson (SBN 053833)
Edward V. Anderson (SBN 083148)
Teague I. Donahey (SBN 197531)
Kevin P. Burke (SBN 241972)
Patrick M. Lonergan (SBN 245807)
Sidley Austin LLP
555 California Street
San Francisco, California 94104
Telephone:     (415) 772-1200
Facsimile:      (415) 772-7400

Attorneys For Plaintiff
STMicroelectronics, Inc.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| STMICROELECTRONICS, INC., a corporation ) | Case No. 1-07-CV-080123 |
| Plaintiff, ) | **PLAINTIFF STMICROELECTRONICS, INC.'S FIRST SUPPLEMENTAL** |
| v. ) | **RESPONSES TO DEFENDANT SANDISK'S FIRST SET OF FORM** |
| ELIYAHOU HARARI, an individual; ) SAN DISK CORPORATION, a corporation; ) and DOES 1 through 20, inclusive, ) | **INTERROGATORIES – LIMITED CIVIL CASES (ECONOMIC LITIGATION)** |
| Defendants. ) | |

**PROPOUNDING PARTY: Defendant SanDisk Corporation**

**RESPONDING PARTY:    Plaintiff STMicroelectronics, Inc.**

**SET NO:                      One**

1   **FORM INTERROGATORY NO. 150.6:**

2       Identify all DOCUMENTS that evidence each modification of the agreement not in writing

3   and for each state the name, ADDRESS, and telephone number of the PERSON who has each

4   DOCUMENT.

5   **RESPONSE TO FORM INTERROGATORY NO. 150.6:**

6       ST incorporates by reference its general objections, set forth above, and makes the following

7   additional objections to this interrogatory. ST objects to this interrogatory on the grounds that it

8   calls for the disclosure of information protected by the attorney-client privilege, work product

9   doctrine, or any other applicable privilege. ST also objects to the term "modification of the

10  agreement not in writing" as used in this interrogatory as vague and ambiguous. ST further objects

11  to this interrogatory as harassing because it is duplicative of at least Form Interrogatory 50.1 served

12  by SanDisk on December 14, 2007.

13      Subject to, and without waiving its general and specific objections, ST responds as follows:

14  ST incorporates by reference its response to Form Interrogatory 50.1 served by SanDisk in this

15  action on December 14, 2007.

16  **FIRST SUPPLEMENTAL RESPONSE TO FORM INTERROGATORY NO. 150.6:**

17      Subject to, and without waiving, its general and specific objections, ST responds as follows:

18  ST does not currently believe that there are any modifications to the agreement. Discovery is

19  ongoing and ST will supplement its response if it discovers other information relevant to this

20  response.

21  **FORM INTERROGATORY NO. 150.7:**

22      Describe and give the date of every act or omission that you claim is a breach of the

23  agreement.

24  **RESPONSE TO FORM INTERROGATORY NO. 150.7:**

25      ST incorporates by reference its general objections, set forth above, and makes the following

26  additional objections to this interrogatory. ST objects to this interrogatory on the grounds that it

27  calls for the disclosure of information protected by the attorney-client privilege, work product

28  doctrine, or any other applicable privilege. ST also objects to the term "agreement" as used in this

24

1    interrogatory as vague and ambiguous.  ST further objects to this interrogatory as harassing because

2    it is duplicative of at least Form Interrogatory 50.2 served by SanDisk on December 14, 2007.

3        Subject to, and without waiving its general and specific objections, ST responds as follows:

4    ST incorporates by reference its response to Form Interrogatory 50.2 served by SanDisk in this

5    action on December 14, 2007.

6    **FIRST SUPPLEMENTAL RESPONSE TO FORM INTERROGATORY NO. 150.7:**

7        Subject to, and without waiving, its general and specific objections, ST responds as follows:

8    Under the agreement, Dr. Harari had a duty to disclose and describe for WSI all inventions,

9    improvements, discoveries and technical developments, whether or not patentable, made or

10   conceived by him, either alone or with others, during the term of his employment as an employee,

11   officer, consultant and/or director of WSI.  ST believes that Dr. Harari breached the agreement each

12   and every instance in which he had a duty to disclose or describe to WSI all inventions,

13   improvements, discoveries and technical developments, whether or not patentable, made or

14   conceived by him, either alone or with others, during the term of his employment as an employee,

15   officer, consultant and/or director of WSI, but failed to do so.  Such instances include, but may not

16   be limited to:  his filing of Patent Application 07/185,699 with the United States Patent and

17   Trademark Office on April 26, 1988, his filing of Patent Application 07/216,873 with the United

18   States Patent and Trademark Office on June 8, 1988, his filing of Patent Application 07/204,175

19   with the United States Patent and Trademark Office on July 8, 1988, his filing of Patent Application

20   07/323,779 with the United States Patent and Trademark Office on March 15, 1989, his filing of

21   Patent Applications 07/337,566 and 07/337,579 with the United States Patent and Trademark Office

22   on April 13, 1989, his filing of all related applications, and his subsequent assignment of the

23   aforementioned applications to SanDisk, even though these applications were automatically assigned

24   to WSI per the terms of the agreement.  The dates of the acts constituting a breach of the agreement

25   may have occurred earlier than stated above, but thus far SanDisk has refused to provide ST with

26   critical information, such as when Dr. Harari conceived of the inventions disclosed in the patent

27   applications listed above.  Finally, this response does not include additional duties to WSI that Dr.

28   Harari breached, such as the duties he owed to WSI as a fiduciary.  Discovery is ongoing and ST

25

1    will supplement its response if it discovers other information relevant to this response.

2    **FORM INTERROGATORY NO. 150.8:**

3        Identify each agreement excused and state why performance was excused.

4    **RESPONSE TO FORM INTERROGATORY NO. 150.8:**

5        ST incorporates by reference its general objections, set forth above, and makes the following

6    additional objections to this interrogatory. ST objects to this interrogatory on the grounds that it

7    calls for the disclosure of information protected by the attorney-client privilege, work product

8    doctrine, or any other applicable privilege. ST also objects to the terms "agreement" and "excused"

9    as used in this interrogatory as vague and ambiguous. ST further objects to this interrogatory as

10   harassing because it is duplicative of at least Form Interrogatory 50.3 served by SanDisk on

11   December 14, 2007.

12       Subject to, and without waiving its general and specific objections, ST responds as follows:

13   ST incorporates by reference its response to Form Interrogatory 50.3 served by SanDisk in this

14   action on December 14, 2007.

15   **FIRST SUPPLEMENTAL RESPONSE TO FORM INTERROGATORY NO. 150.8:**

16       Subject to, and without waiving, its general and specific objections, ST responds as follows:

17   ST does not currently believe that any agreement was excused. Discovery is ongoing and ST will

18   supplement its response if it discovers other information relevant to this response.

19   **FORM INTERROGATORY NO. 150.9:**

20       Identify each agreement terminated by mutual agreement and state why it was terminated,

21   including dates.

22   **RESPONSE TO FORM INTERROGATORY NO. 150.9:**

23       ST incorporates by reference its general objections, set forth above, and makes the following

24   additional objections to this interrogatory. ST objects to this interrogatory on the grounds that it

25   calls for the disclosure of information protected by the attorney-client privilege, work product

26   doctrine, or any other applicable privilege. ST also objects to the terms "agreement" and

27   "terminated" as used in this interrogatory as vague and ambiguous. ST further objects to this

28   interrogatory as harassing because it is duplicative of at least Form Interrogatory 50.4 served by

1  additional objections to this interrogatory.  ST objects to this interrogatory on the grounds that it

2  calls for the disclosure of information protected by the attorney-client privilege, work product

3  doctrine, or any other applicable privilege.  ST also objects to the terms "agreement" and

4  "ambiguous" as used in this interrogatory as vague and ambiguous.  ST further objects to this

5  interrogatory as harassing because it is duplicative of at least Form Interrogatory 50.6 served by

6  SanDisk on December 14, 2007.

7         Subject to, and without waiving its general and specific objections, ST responds as follows:

8  ST incorporates by reference its response to Form Interrogatory 50.6 served by SanDisk in this

9  action on December 14, 2007.

10  **FIRST SUPPLEMENTAL RESPONSE TO FORM INTERROGATORY NO. 150.11:**

11         Subject to, and without waiving, its general and specific objections, ST responds as follows:

12  ST does not presently believe that any agreement is ambiguous.  Discovery is ongoing and ST will

13  supplement its response if it discovers other information relevant to this response.

14

15  Dated: April 7, 2008                    SIDLEY AUSTIN LLP

16

17                                          By:

18

19

20                                               Teague I. Donahey
21                                               Attorneys for Plaintiff
                                                 STMicroelectronics, Inc.
22

23

24

25

26

27

28

1

## <u>VERIFICATION</u>

2  In accordance with Cal. Code. of Civ. Pro. § 2030.250, on behalf of STMicroelectronics,

3  Inc., I, Steven K. Rose, Vice President, Secretary, and General Counsel of STMicroelectronics, Inc.,

4  declare under penalty of perjury under the laws of the State of California, that the foregoing answers

5  to interrogatories are, to the best of my knowledge, information and belief, founded upon reasonable

6  inquiry, true, and correct.

7

8

9  Dated:  April 4, 2008 _____

10  Steven K. Rose

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST SUPPLEMENTAL RESPONSE TO FORM INTERROGATORIES – ECONOMIC LITIGATION
Case No. 1-07-CV-080123

# EXHIBIT C

1  Russell L. Johnson (SBN 053833)
   Edward V. Anderson (SBN 083148)
2  Teague I. Donahey (SBN 197531)
   SIDLEY AUSTIN LLP
3  555 California Street
   San Francisco, California 94104
4  Telephone:    (415) 772-1200
   Facsimile:    (415) 772-7400
5
   James P. Bradley (SBN 056308)
6  Li Chen (*Pro Hac Vice*)
   SIDLEY AUSTIN LLP
7  717 North Harwood
   Dallas, Texas 75201
8  Telephone:    (214) 981-3300
   Facsimile:    (214) 981-3400
9
   Attorneys for Plaintiff
10 STMicroelectronics, Inc.

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF SANTA CLARA

13

14 STMICROELECTRONICS, INC., a corporation  )  Case No. 1-07-CV-080123
                                           )
15            Plaintiff,                    )  Complaint Filed:  October 14, 2005
                                           )  Trial Date:  None Set
16      v.                                  )  Judge:  Honorable Neal A. Cabrinha
                                           )
17 ELIYAHOU HARARI, an individual;          )  **REPLY IN SUPPORT OF ST'S MOTION**
   SAN DISK CORPORATION, a corporation;     )  **TO COMPEL DISCOVERY TO SANDISK**
18 and DOES 1 through 20, inclusive,        )  **CORPORATION**
                                           )
19            Defendants.                   )  Date:   April 18, 2008
                                           )  Time:   10:00 a.m.
20                                          )  Place:  Department 7
                                           )  Judge:  Hon. Socrates Manoukian
21                                          )
                                           )
22                                          )
                                           )
23 ─────────────────────────────────────── )

24

25

26

27

28

## I.    INTRODUCTION

For over two (2) years SanDisk has frustrated ST's efforts to advance this case. With the denial of certiorari by the California Supreme Court, Defendant's procedural maneuvers have finally been exhausted. But SanDisk is still impeding case progress by refusing to provide basic discovery. Defendant's Opposition mischaracterizes the record, ignores facts, and distorts precedent. ST submits this Reply to clear the record.

SanDisk argues the Court should deny ST's Motion because ST's Declaration does not specifically set forth Plaintiff's efforts to resolve the disputes through the meet and confer process. Importantly, SanDisk does not claim ST's meet and confer efforts were inadequate. It cannot. Over the past four (4) months, ST conferred with and wrote to SanDisk's counsel on approximately a dozen separate occasions to address ST's concerns with SanDisk's inadequate discovery responses. *See* Ex. 1-7.[1] ST brought this Motion only because its efforts were unsuccessful. No more can reasonably be expected from the meet and confer process. Remarkably, while SanDisk does not contest the fact that ST has met and conferred, it nonetheless asks the Court to deny ST's motion based on alleged technical deficiencies in ST's Declaration. SanDisk's arguments distort California precedent.

To promote private resolution of disputes, the Discovery Act requires the moving party to declare that he or she has made a serious attempt to obtain an informal resolution of each issue before bringing a motion to compel. *See, Stewart v. Colonial Western Agency, Inc.,* (2001) 87 Cal.App.4th 1006, 1016, 105 Cal. Rptr.2d 115. SanDisk argues ST's Declaration fails this standard. Defendant is mistaken. ST's Motion makes clear Plaintiff has made extensive efforts to informally

---

[1] *See, e.g.,* the following letters attached as Exhibits 1-7. Each detail SanDisk's discovery deficiencies and describe the on-going disputes between the parties that were the subject of several meet and confer teleconferences over the past four months: Exhibit 1 Letter from E. Anderson to M. Reed dated January 30, 2008 (also referencing teleconference between counsel on January 25, 2008 and prior discussions between lead counsel); Exhibit 2 Letter from L. Chen to M. Reed and B. Volkmer dated February 5, 2008 (also referencing teleconference between counsel on February 4, 2008); Exhibit 3 Letter from L. Chen to M. Reed and B. Volkmer dated February 11, 2008; Exhibit 4 Letter from L. Chen to M. Reed dated February 22, 2008 (also referencing teleconference between counsel on February 12, 2008); Exhibit 5 Letter from L. Chen to M. Reed and B. Volkmer dated March 11, 2008 (also referencing call scheduled for March 11, 2008); Exhibit 6 Letter from L. Chen to M. Reed and B. Volkmer dated March 11, 2008; and Exhibit 7 Letter from T. Donahey to M. Reed (also referencing teleconference on March 12, 2008).

1

1  resolve these discovery disputes: "Over the past few months, ST has conferred with SanDisk over

2  half a dozen times through letters and telephone calls."  Plaintiff STMicroelectronics Inc's Notice of

3  Motion and Motion to Compel Discovery to SanDisk Corporation at 8.  Similarly, ST's Declaration

4  specifically incorporates a February 15, 2008 letter from SanDisk's counsel.  The letter revealed

5  ST's efforts to secure a production schedule was futile, and it references another conference between

6  the parties.  The fact is ST has satisfied its meet and confer obligations.  California law requires no

7  more.  *See, Stewart v. Colonial Western Agency, Inc* (2001) 87 Cal.App.4th 1006, 1016, 105 Cal.

8  Rptr.2d 115; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431, 79 Cal.Rptr.2d 62.

9       Unfortunately, the meet and confer argument is not the only instance where Defendant

10  attempts to elevate form over substance.  SanDisk also urges the Court to deny ST's motion because

11  ST does not cite to precedential authority in its briefing papers.  While it is true that ST's motion

12  relies more on logic and reason than cases based on dissimilar facts, it is error for SanDisk to suggest

13  this Court is now precluded from considering relevant authority.  Section 451(a) of the California

14  Evidence Code, by way of example, specifically states "Judicial notice shall be taken of . . . The

15  decisional . . . law of this state . . ."  More importantly, the Court need not rely on precedent to

16  compel SanDisk to provide discovery responses.  There can be no reasonable question about the

17  Court's power to control the conduct of discovery in its cases: *e.g.*, "Undoubtedly the discovery

18  statute vest a wide discretion in the trial court in granting or denying discovery." *Obregon v.*

19  *Superior Court* (1998) 67 Cal.App.4th 424, 431 - 32, 79 Cal.Rptr.2d 62. Again, SanDisk's

20  contention to the contrary is unfounded.

21  **II.    DISCUSSION**

22       **A.    ST's Requests for Admission are Clear, SanDisk's Claim of Confusion is Not**
23       **Credible**

24       The ownership of numerous patents issued by the United States Patent and Trademark Office

25  and by foreign authorities is at issue in this case.  Approximately fifty (50) U.S. patents are currently

26  encompassed by ST's claims (the number is dynamic, as new patents are continuing to issue from

27  the disputed applications).  As Defendants are well aware, Plaintiff's claim is based on the timing of

28  Dr. Harari's invention.  If an invention was conceived when Dr. Harari owed WSI a contractual and

1  fiduciary duty to disclose and assign his inventions,[2] then ST is the rightful owner (whether sole or

2  joint) of all patents that flowed from the disputed patent application.

3      It is indisputable that Dr. Harari conceived many of the subject inventions while he was still

4  affiliated with WSI. But ST's claims also reach patent applications that Dr. Harari filed on

5  April 13, 1989, which is approximately a month after the effective date of Dr. Harari's resignation

6  from the Board. This is because although WSI's Board accepted Dr. Harari's resignation on

7  May 17, 1989, and backdated the effective date of the resignation to March 15, it did so without

8  being aware of Dr. Harari's secret patent filings. From April of 1988 through 1989, Dr. Harari filed

9  six (6) patent applications with the U.S. Patent Office. Not once did he disclose his patent filings to

10  WSI's Board. This questionable history increases the likelihood that Dr. Harari conceived the

11  inventions claimed in his April 13, 1989 applications while he was still affiliated with WSI. The

12  conception dates have important implications for these and other issues in the case, ST needs to

13  secure this information to prepare its case, and Dr. Harari and SanDisk are the only parties with this

14  information.

15      ST's Requests for Admission ask SanDisk to affirm Dr. Harari made certain claimed

16  inventions before March 15, 1989 (RFAs 4-6), and that the claimed inventions were not disclosed to

17  WSI prior to March 15, 1989 (RFAs 7-12). With respect to RFAs 4-6, Defendant previously stated

18  "SanDisk will respond to these requests with the understanding that word 'making' means

19  'conceived and/or reduced to practice' as those terms are used under federal patent law . . . ." *See

20  also*, Ex. 8 at 15-16 (Defendant applied this same definition of "making" in response to Document

21  Requests No. 15 & 16). This definition, which Defendant crafted for itself, is precisely what ST

22  meant by "made." It is what ST is asking SanDisk to apply. And it casts doubt on Defendant's

23  claims of confusion. But instead of answering these requests according to the definition crafted by

24  its own attorneys, SanDisk's responses focus on April 13, 1989, a time frame that is outside of and

25  not relevant to the RFAs. This is not sufficient. SanDisk should admit or deny RFAs 4-6.

26      It is similarly difficult to comprehend SanDisk's refusal to respond to RFAs 7-12. There is

27  ---
[2] To be clear, it is ST's position that the agreement between WSI and Dr. Harari operated to

28  automatically assign his inventions to WSI, and that his subsequent assignments to SanDisk amount
to additional breaches.

1  no one better positioned than Dr. Harari to state whether he disclosed his secret patent filings to

2  WSI, and whether he made such alleged disclosures before March 15, 1989, the official date of his

3  departure from the company.    Remarkably, SanDisk's Opposition suggests Defendant has not even

4  *asked* Dr. Harari whether he allegedly disclosed these secret filing activities to WSI.    *See,* SanDisk's

5  Opposition at 14 ("inquiring of Dr. Harari whether he disclosed the inventions to WSI prior to that

6  date woud not enable SanDisk to respond … to these requests").    Instead, Defendant argues ST did

7  not specifically direct the RFAs at Dr. Harari.    But the fact that ST's RFAs are not limited to Dr.

8  Harari does not excuse Defendant from its duty of inquiry.    If either Dr. Harari or SanDisk contend

9  they disclosed these filings to WSI before March 15, 1989, Defendant should have denied the RFA

10  and explained that denial in response to Form Interrogatory 17.1.    If Dr. Harari and SanDisk

11  concealed these filings from WSI, then ST is entitled to at least a partial admission from SanDisk

12  that Dr. Harari and SanDisk failed to disclose the secret filings to WSI before

13  March 15, 1989 (*i.e.,* that Defendants concealed the filings from WSI).

14      ST's RFAs seek basic information that is critical to the development of this case.    SanDisk's

15  objections and  arguments contradict Defendant's own positions and distort the requests.

16  Defendant's continuing efforts to resist legitimate discovery is highly improper.

17      **B.    SanDisk's Interrogatory Answers have been Woefully Inadequate**

18      SanDisk did not specifically object to ST's Motion to Compel further responses for Form

19  Interrogatories 16.1, 17.1, 115.2, 116.1, & 116.6.    It is not clear if the omission was an oversight or

20  if SanDisk is implicitly acknowledging its need to supplement its responses.    Importantly, SanDisk is

21  not likely to have legitimate bases to support its continuing denial to provide discovery.    The Court

22  should compel SanDisk to provide meaningful responses to these Form Interrogatories, which would

23  require Defendant to state, among other things, all facts upon which it bases: its contention that

24  others, if any, contributed to ST's injuries; its refusal to give an unqualified admission in response to

25  ST's RFAs; its contention that it is not responsible for ST's damages; or its contention that ST's

26  claims of loss of earnings or income (as identified in the Complaint) is unreasonable.

27      Defendant re-raises on page 9 of its Opposition the notion that the parties did not confer on

28  Form Interrogatories 16.2, 115.3, 150.6, 150.7, 150.9, and 150.11.    Defendant is again mistaken.

---

4

1    Form Interrogatories 16.2, 115.3, 150.6, and 150.11 are virtually identical to Form Interrogatories

2    116.2, 16.1, 50.1, and 50.6, interrogatories on which the parties have specifically conferred.[3]

3         Form Interrogatory 15.1 asks SanDisk to state all facts upon which Defendant bases its denial

4    of a material allegation or a special or affirmative defense.  Although SanDisk provided a 7-page

5    response, that response consists almost entirely of argument.  Defendant's response does little to

6    address the information sought by this interrogatory, and the Court should compel SanDisk to

7    provide meaningful responses, rather than attorney argument.

8         Form Interrogatories 115.3 & 16.2[4] ask Defendant to identify anyone else that is responsible

9    for the damages claimed in this case or the facts upon which Defendant bases its claim that ST was

10   not injured.  SanDisk also refused to respond to these requests, choosing instead to hide behind

11   privilege and immunity claims.  It is well settled, however, that a litigant cannot use privilege as both

12   a sword and a shield.  If someone other than SanDisk is responsible for the damages claimed in the

13   action, it is difficult to see how privilege attaches to the identity of that individual (which

14   presumably includes Dr. Harari).  Similarly, unless SanDisk is willing to forego its right to argue ST

15   has not been injured, it is difficult to understand how all facts relating to that argument could be

16   shielded by a privilege claim.

17        Form Interrogatories 12.3, 12.6, and 112.2-4[5] ask SanDisk to identify the individuals that

18   provided or received a written or recorded statement concerning the claims in this case.  Defendant

19   alleges this information is protected from discovery.  SanDisk is mistaken.  California law does not

20   permit a Defendant to shield the existence of relevant information under a claim of privilege.  *See,*

21   *Lipton et al. v. Superior Court* (1996) 48 Cal.App.4th 1599, 1619, 56 Cal.Rptr.2d 341.  Indeed, if

22   that were the case, no litigant would ever have to provide a privilege log.  The fact that Defendant's

23   position is far afield is demonstrated by the authority on which it relies.  In *Nacht & Lewis*

---

24   [3] Similarly, Form Interrogatories 150.7 and 150.9 are parallel to 50.2 and 50.4.  Because ST's notes
25   and SanDisk's differ on whether interrogatories 50.2 and 50.4 were discussed, ST elected to omit
     them from the Motion to Compel rather than debate the issue.  ST now also withdraws
     Interrogatories 150.7 and 150.9 from its Motion.
26   [4] Page 5 of ST's Motion to Compel contains a typographical error, twice referencing 16.1 instead of
27   addressing 16.1 & 16.2.
     [5] Counsel for SanDisk has acknowledged the need to supplement their response to Interrogatory No.
28   112.4 but have yet to do so.  *See,*  Dec. of Matthew R. Reed ISO Defendants' Opposition to ST's
     Motion to Compel Discovery at ¶ 7.

5

1    *Architects*, the court specifically acknowledged "a list of potential witnesses who turned over to

2    counsel their independently prepared statements would have no tendency to reveal counsel's

3    evaluation of the case . . . statements written or recorded independently by witnesses neither reflect

4    an attorney's evaluation of the case nor constitute derivative material." *Nacht & Lewis Architects,*

5    *Inc., et al. v. Superior Court* (1996) 47 Cal.App.4th 214, 217-18, 54 Cal.Rptr.2d 575.

6        The information sought by these interrogatories is directed to written statements from lay

7    witnesses, not counsel. Insofar as SanDisk claims privilege over those documents, it must provide a

8    privilege log that, at a minimum, identifies the parties involved in the communication, the date of the

9    document, and the subject matter to which the document pertains. *See, Lipton et al. v. Superior*

10   *Court* (1996) 48 Cal.App.4th 1599, 1619, 56 Cal.Rptr.2d 341 ("The party claiming the privilege has

11   the burden to show that the communication sought to be suppressed falls within the terms of the

12   claimed privilege."). A blanket statement that there is no non-privileged information to provide is

13   inappropriate and improper.

14        Although Defendant provides preliminary responses to Form interrogatories 50.1, 50.3, 50.6,

15   150.1-9, and 150.11, which ask SanDisk to identify, among other things, any ambiguities, any

16   alleged breach or termination, and any obligations that were excused, there is no way for ST to

17   assess the adequacy of SanDisk's response. This is problematic. By way of example, Defendant

18   appears to not have even asked Dr. Harari to answer straightforward questions before responding to

19   ST's RFAs.

20        ST does not seek to "discover the details of SanDisk's attorneys' investigations of the case,"

21   but a Court Order compelling SanDisk to state all facts called for by these interrogatories by a date

22   certain (or be precluded from presenting such facts at a future date) would give ST the assurance that

23   SanDisk has performed the proper internal investigation. If SanDisk has in fact conducted a

24   reasonable inquiry, it could comply with such an Order with virtually no additional effort.

25

26

27

28

6

### C.    ST is being Prejudiced by SanDisk's Production Delays[6]

This case and ST's discovery requests have been pending for over two (2) years.  SanDisk has taken extraordinary measures to delay and frustrate the progress of this suit, including pursuing every possible appeal and re-raising arguments of dubious merit – arguments that have been rejected by multiple courts.  Although the case was stayed during Defendant's appeals, ST's discovery requests have been pending during this entire period, and there was never any question that SanDisk had to respond to these requests after exhausting its appeals.  Defendant's discovery obligations continued, and it should have been diligent in preserving and collecting relevant information.

SanDisk knew it had to produce relevant documents from parallel litigation between the parties.  It knew that under the applicable protective orders ST had to destroy the documents in its possession at the conclusion of those cases.  These documents have been reviewed, processed, and produced by SanDisk in parallel proceedings.  These documents were flagged by ST in multiple correspondence.  And they should have been promptly produced after SanDisk exhausted its appeals.  Instead, SanDisk waited three (3) months after its final appeal was rejected before producing any documents, and that initial production comprised a paltry 48,000 pages of mostly public documents.  The production did not contain any of the litigation files that ST identified in prior correspondence.

Even at the time of that initial production Defendant had already identified approximately 2 million pages of relevant documents.  Although Defendant slightly increased its production rate after numerous complaints from ST, things were still progressing at a snail's pace, and SanDisk would have taken another eighteen (18) months to conclude its initial production.  Faced with the possibility of a 4-5 year delay before concluding discovery, and given Defendant's consistent refusal to provide a production schedule, ST was forced to seek relief from this Court.  *Fuller et al. v. Superior Court* (2001) 87 Cal.App.4th 299, 306-37, 104 Cal.Rptr.2d 525 ("Plaintiffs are entitled to an expeditious and fair resolution of their civil claims without being subjected to unwarranted surprise.  Among the myriad purposes of the civil discovery statutes is to safeguard against surprise

---

[6] In a footnote, SanDisk argues ST's Motion is time-barred.  But it cannot be reasonably argued that CCP 2031.310(c) has any applicability to this Motion.  It applies to motions to compel further responses to RFPs.  ST's Motion, however, is being brought pursuant to CCP 2031.320(a).  ST acknowledges it referred to the wrong section in its opening Motion.

1   and gamesmanship, and to prevent delay.").

2        SanDisk recently produced another 600,000 pages in a two (2) week period, and it compiled

3   and produced a sizable privilege log during that time.[7]  Significantly, this progress came only after

4   ST filed its Motion to Compel.   Defendant argues its recent production volume demonstrates

5   SanDisk's good faith and moots ST's requested relief. Not so.  The history of SanDisk's discovery

6   conduct in this case, the remarkable positions that it has taken in response to ST's RFAs and Form

7   Interrogatories, and the liberties that SanDisk continues to take with the facts and the law

8   demonstrate Defendant has little interest in cooperation.    Indeed, SanDisk's recent discovery

9   progress suggests it was well within Defendant's means to be more forthcoming and responsive –

10  yet it chose to wait until ST filed its Motion to Compel.

11       ST has been prejudiced by SanDisk's delay tactics. *Id.* at 306-37, 104 Cal.Rptr.2d 525.  ST

12  intends to move the Court for an aggressive schedule, but the only way to accomplish this feat would

13  be to secure Defendant's cooperation in discovery, whether voluntarily or through Court Order.

14  Indeed, until SanDisk's production is substantially complete, ST cannot meaningfully depose key

15  witnesses in this case.

16  **III.    CONCLUSION**

17       Dr. Harari breached his contractual and fiduciary duty to WSI when he concealed valuable

18  inventions from the company, filed patent applications for these inventions in secret, and assigned

19  the rights in many of the disputed patent applications and resulting patents to SanDisk when ST was

20  and continues to be the rightful owner (whether sole or joint). All of the disputed patent applications

21  were filed on or before April 13, 1989, before WSI accepted and backdated Dr. Harari's resignation

22  from the Board, and most were filed by March 15, 1989, when Dr. Harari served as a WSI consultant

23  and Board member.

24       For close to twenty (20) years, Dr. Harari and SanDisk have conspired to fraudulently

25

26  [7] SanDisk's privilege log runs 47 pages, but ST could not find a single entry that discloses Dr.
    Harari's engagement of his patent prosecution counsel.  With respect to the entries that disclose
27  work involving draft patent applications, there is no identification of the application at issue, which
    effectively precludes ST from assessing the completeness of SanDisk's privilege entries. ST will
28  separately confer with SanDisk regarding the need to update its privilege descriptions, but the Court
    should compel Defendant to complete its privilege log.

1  conceal his breaches of contractual and fiduciary duties to WSI. Approximately fifty (50) patents

2  have issued in the United States alone from these illicit activities, and Defendants have significantly

3  leveraged this portfolio to secure handsome profit. The 2 million pages of relevant documents

4  identified by SanDisk is a significant volume, but given the magnitude of the issue and the

5  significant passage of time, there is every reason to expect SanDisk will locate substantially more

6  documents and information as this case progresses. Allowing SanDisk to continue its questionable

7  discovery path will likely delay this case by a number of additional years and prompt an increasing

8  number of discovery battles. Defendant's conduct in this case has demonstrated SanDisk will not

9  voluntarily engage in discovery absent Court Order. The Court should Order SanDisk to produce all

10  relevant documents, complete its privilege log, and supplement its responses to the applicable

11  interrogatories and RFAs within a month of the Court's Order.

12

13

Dated: April 11, 2008                          SIDLEY AUSTIN LLP

14

15                                             By: _____

16                                             Teague I. Donahey
                                               Attorneys for Plaintiff
17                                             STMicroelectronics, Inc.

18

19

20

21

22

23

24

25

26

27

28

ST's REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES
Case No. 1-07-CV-080123